THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LANCE M. BRYANT, Defendant-Appellant.

Fourth District   No. 4—05—1071

Opinion filed June 17, 2009.

Daniel D. Yuhas and Michael H. Vonnahmen, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Steve Ferguson, State's Attorney, of Charleston (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In October 2005, a jury convicted defendant, Lance M. Bryant, of two counts of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1(a)(1) (West 2004)). Count I alleged that he committed that offense by placing his penis in the anus of M.S., who was under 13 years of age when defendant committed that act. Count II alleged that defendant placed his penis in M.S.'s mouth. In December 2005, the trial court sentenced defendant to consecutive nine-year prison terms on each count.

Defendant appealed, arguing that the trial court erred by (1) granting the State's motion to permit M.S. to testify via closed-circuit television; (2) allowing testimony of M.S.'s hearsay statements, pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10 (West 2004)), because that section is unconstitutional; (3) allowing testimony of M.S.'s hearsay statements that defendant placed his penis in her mouth when she did not testify to that at trial; and (4) failing to give Illinois Pattern Jury Instructions, Criminal, No. 11.66 (4th ed. 2000) (hereinafter IPI Criminal 4th), as required by section 115—10(c) of the Code (725 ILCS 5/115—10(c) (West 2004)). In March 2007, this court rejected defendant's arguments and affirmed. *People v. Bryant*, No. 4—05—1071 (May 31, 2007) (unpublished order under Supreme Court Rule 23).

Defendant filed a petition for leave to appeal with the Supreme Court of Illinois. In January 2009, that court denied his petition but also entered the following nonprecedential supervisory order:

"In the exercise of this court's supervisory authority, the Appellate Court, Fourth District, is directed to vacate its order in *People v. Bryant*, No. 4—05—1071 (May 31, 2007). The appellate court is instructed to reconsider its decision in light of this court's opinion in *In re Rolandis G.*, [232 Ill. 2d 13, 902 N.E.2d 600 (2008)], to determine whether a different result is warranted." *People v. Bryant*, 231 Ill. 2d 638, 899 N.E.2d 1076 (2009) (nonprecedential supervisory order on denial of petition for leave to appeal).

In accordance with the supreme court's directive, we vacate our earlier decision in this case. Further, after reconsidering this case in light of *Rolandis G.*, we conclude that a different result is not warranted. Accordingly, we again disagree with defendant's arguments and affirm his convictions.

## I. BACKGROUND

In March 2005, the State charged defendant with four counts of predatory criminal sexual assault of a child, all involving M.S. The first two counts, as earlier described, alleged those offenses occurred during the summer of 2003. Count III alleged that defendant committed the same offense by placing his penis in M.S.'s vagina. Count IV alleged that defendant committed the same offense by placing his penis in the anus of M.S. in December 2004. (The trial court later granted the State's motion to dismiss count IV.)

In August 2005, the State moved to (1) take testimony of M.S. via closed-circuit television, pursuant to section 106B—5 of the Code (725 ILCS 5/106B—5 (West 2004)), and (2) admit hearsay evidence of statements M.S. made, pursuant to section 115—10 of the Code (725 ILCS 5/115—10 (West 2004)).

### A. The State's Motion To Take Testimony Via Closed-Circuit Television

At a hearing on the State's motion to take testimony via closed-circuit television, which was held later in August 2005, the State called Lisa Saunders, the director of children's services at the Sexual Assault Counseling and Information Service. Saunders testified that she had been counseling M.S., who was then six years old, for two months. During that time, Saunders had about six different counseling sessions with M.S., with each one lasting approximately 50 minutes. No one else was present during those sessions. Saunders discussed with M.S. how M.S. would be a material witness in the State's case against defendant and explained that she would need to come into court and tell the truth. M.S. responded that she was very afraid to do that. Saunders explained to M.S. that she would be safe and everything would be fine in the courtroom, but M.S. told her that she was afraid that defendant would still get to her where she was sitting "and do that stuff to her again." In Saunders' professional opinion, testifying in the courtroom with defendant present would cause M.S. emotional distress. Saunders believed that M.S. would not be able to testify in front of defendant "because she would be scared, and she said that she thinks he would be real mad at her because she wasn't supposed to tell."

No other witness testified at the hearing. Defendant objected to the State's motion on the ground that his right of confrontation under the United States and Illinois Constitutions (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8) would be impaired. The trial court granted the State's motion, explaining as follows:

> "The [c]ourt finds that the motion is well taken. The [c]ourt finds that the [d]efendant is charged with an offense as alleged in the statute. The [d]efendant is charged with predatory criminal sexual assault of a child. The court finds that [M.S.] is under [18] years of age. The [c]ourt further finds from the testimony offered before it that the testimony of [M.S.], the alleged child victim, in the courtroom in the presence of the [d]efendant would result in [M.S.] suffering serious emotional distress. It has been testified that [M.S.] indicated she did not want to be present in the same room with the [d]efendant. She was fearful that he might be able to get to her. The court finds that the State has met [its] burden of proof necessary for the granting of the motion. The record will reflect that the motion is granted over the objection of counsel for the [d]efendant."

### B. The State's Motion To Admit Testimony Pursuant to Section 115—10

At an August 2005 hearing on the State's motion to admit M.S.'s hearsay testimony pursuant to section 115—10 of the Code, Patricia

Eastin testified that she was a school social worker at M.S.'s elementary school. In January 2005, Eastin met with M.S. following a referral from her teacher. During that first meeting, M.S. told Eastin, among other things, that whenever she was in the bathroom with defendant at her mother's house (defendant and M.S.'s mother were married at the time), he touched his private parts to her private parts, and she had to wipe "the pee" off her body with toilet paper. Defendant also told her "to suck it," and she did. She then "puked because of the pee."

Charlotte Gano testified that she was employed by the Department of Children and Family Services (DCFS) as a child-protective-services worker. In January 2005, Gano interviewed M.S. and videotaped the interview, which was shown in court during the hearing. M.S. told Gano, in part, that defendant "put his wiener in her butt, that it made her butt bleed, and then it hurt to poop."

Noelle Cope, a nurse practitioner at Sarah Bush Lincoln Hospital, testified that in February 2005, she examined M.S., who told her that defendant had put his private in her private. Cope asked M.S. to identify her private, and she "pointed toward her butt." Cope then asked, "Your butt is where you poop from?" and M.S. said, "Yes." M.S. told Cope that it happened "like 100 times" in the bathroom of her house. Cope also asked M.S. if it hurt when this occurred, and she responded, "Yes," saying that there had been "some blood in her poop one time." M.S. also told Cope that defendant had made her put her mouth on his private, and he told her "he was going to pee," and M.S. said it tasted like blood.

Cope also noted some peculiar findings on M.S.'s anal area. Cope explained that (1) anuses are usually linear or circular, but M.S.'s anus was a "y-shape"; (2) M.S. had some thick scarring present; and (3) Cope made other findings about similarly abnormal circumstances. Cope explained that these findings were not specific for sexual abuse, but they could certainly be caused from anal penetration.

After the State represented to the trial court that M.S. would be testifying at trial, the court found that (1) the statutory requirements for the admissibility of M.S.'s hearsay statements under section 115—10 of the Code were met and (2) Eastin, Gano, and Cope would be permitted to testify to those statements at trial.

## C. Testimony at Trial

Because defendant is not challenging the sufficiency of the evidence at trial to sustain his convictions, we will review it only to the extent necessary to put his arguments in context.

The State's first witness at the October 2005 jury trial was M.S., who testified via closed-circuit television. M.S. testified that she was seven years old and lived with her grandmother. Before that, she lived with defendant, her mother, and her siblings. M.S. also testified that defendant put his private part in her bottom more than 10 times. M.S. talked to a counselor at school about what he did to her but said she did not remember talking about it to a nurse in a doctor's office.

Eastin, Gano, and Cope all testified substantially consistently with the testimony they gave at the August 2005 hearing on the State's motion to admit hearsay testimony under section 115—10 of the Code.

After the State rested, the trial court denied defendant's motion for a directed verdict as to counts I and II but granted it as to count III. The court found that no evidence had been presented of vaginal penetration as alleged in count III.

Several witnesses testified on defendant's behalf as to his reputation for being a moral and decent person. Defendant testified and denied any type of sexual contact with M.S.

On this evidence, the jury convicted defendant of both counts I and II, and the trial court later sentenced him to consecutive nine-year prison terms on each count.

This appeal followed.

## II. ANALYSIS

### A. M.S.'s Testimony Via Closed-Circuit Television

■ Defendant first argues that the trial court erred by granting the State's motion to take M.S.'s testimony via closed-circuit television. Specifically, he contends that although the court found that requiring M.S. to testify in defendant's presence "would result in [her] suffering emotional distress," the court did not find that her in-court testimony would result in a situation "where [M.S.] could not reasonably communicate or that it was likely to cause [M.S.] to suffer adverse effects." Accordingly, defendant asserts that the court's findings were not sufficient to satisfy the requirements of section 106B—5(a)(2) of the Code (725 ILCS 5/106B—5(a)(2) (West 2004)) for allowing a witness to testify via closed-circuit television.

In response, the State first contends that defendant has forfeited this issue on appeal. The State points out that defendant's only objection to M.S.'s testimony via closed-circuit television was that he was denied his right of confrontation. Neither at the August 2005 hearing on the State's motion to permit such testimony nor in defendant's posttrial motion did he raise the ground he now asserts—namely, that in granting the State's motion, the trial court did not make the required statutory finding. The State also contends that given the

court's explanation when it granted the State's motion—specifically, the court's observation that the motion "was well taken"—the court's findings were sufficient. We agree with both of the State's contentions.

First, we note that "[i]t is well established that '[o]bjections at trial on specific grounds [forfeit] all other grounds of objection.' " *People v. Macri*, 185 Ill. 2d 1, 75, 705 N.E.2d 772, 807 (1998), quoting *People v. Miller*, 173 Ill. 2d 167, 191, 670 N.E.2d 721, 733 (1996); see also *People v. White*, 221 Ill. 2d 1, 12, 849 N.E.2d 406, 414 (2006) (same holding), *abrogated on other grounds by People v. Luedemann*, 222 Ill. 2d 530, 548, 857 N.E.2d 187, 199 (2006). As this court explained in *In re Estate of Doyle*, 362 Ill. App. 3d 293, 303, 838 N.E.2d 355, 364 (2005), "[a] specific objection only preserves the ground[s] specified." Here, defendant objected to the testimony of M.S. via closed-circuit television only on the ground of confrontation, not because either the evidence presented or the court's findings failed to meet the statutory requirements to permit such testimony. Clearly, the ground asserted at trial has nothing to do with the ground defendant now asserts on appeal.

Further, forfeiture is particularly appropriate under these circumstances because, had defendant raised the argument at the trial level that he now seeks to raise on appeal, the trial court would have had the opportunity to address any alleged deficiencies in its findings to overcome the problem. Entertaining defendant's argument on appeal would make it advantageous for defendants at trial to refrain from presenting all the grounds they possess when objecting to a court's ruling, and we are disinclined to create such an advantage.

Nonetheless, on the merits, we believe the situation in this case is similar to that addressed by the Fifth District in *People v. Fletcher*, 328 Ill. App. 3d 1062, 768 N.E.2d 72 (2002). In that case, the trial court granted the State's motion to permit the nine-year-old victim to testify via closed-circuit television. In making its determination, the court—as in this case—did not invoke the precise statutory language that, if the child is required to testify, she will suffer severe emotional distress that is likely to cause her to suffer severe adverse effects. The *Fletcher* court concluded that, in context, the court's ruling was adequate. *Fletcher*, 328 Ill. App. 3d at 1071, 768 N.E.2d at 80. We conclude that the same result applies here.

### B. The Admission of M.S.'s Hearsay Statements Pursuant to Section 115—10

Defendant raises two separate arguments regarding the trial court's admission of M.S.'s hearsay statements under section 115—10 of the Code. The first is that section 115—10 is unconstitutional. The

second is that defendant's conviction on count II should be reversed because M.S. did not testify that defendant put his penis in her mouth; testimony to that effect was presented at trial only through the hearsay statements of M.S. testified to by Eastin and Cope. We address each of these arguments in turn.

### 1. *The Constitutionality of Section 115—10*

■ Citing Justice Cook's dissent in *People v. Sharp*, 355 Ill. App. 3d 786, 802-04, 825 N.E.2d 706, 718-20 (2005) (Cook, P.J., dissenting), defendant first argues that section 115—10 of the Code is unconstitutional, at least (apparently) as applied under the circumstances of this case. (We note that the supreme court ordered *Sharp* vacated in a nonprecedential order on January 28, 2009 (*People v. Sharp*, 231 Ill. 2d 649, 899 N.E.2d 1076 (2009)), the same date—and with the same directions—that the supreme court vacated the decision in this case.) That is, defendant contends that M.S. was "unavailable" within the meaning of *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), because she never testified at trial regarding the allegations in count II—namely, that defendant put his penis in her mouth. Instead, testimony about that conduct came only from Cope and Eastin, who were permitted to testify to hearsay statements made to them by M.S. We disagree.

In *People v. Reed*, 361 Ill. App. 3d 995, 1000-03, 838 N.E.2d 328, 332-35 (2005), this court explicitly rejected a similar argument that section 115—10 is unconstitutional, and we adhere to our conclusion in *Reed*. We further note that the First District Appellate Court's holding in *In re E.H.*, 355 Ill. App. 3d 564, 576-77, 823 N.E.2d 1029, 1038-39 (2005)—that section 115—10 is unconstitutional—has been ordered vacated by the Supreme Court of Illinois. *In re E.H.*, 224 Ill. 2d 172, 181, 863 N.E.2d 231, 236 (2006).

### 2. *Defendant's Claim That M.S. Needed To Testify at Trial Regarding the Allegations Contained in Count II*

Defendant next argues that the trial court erred when it allowed into evidence the testimony of M.S.'s hearsay statements regarding the allegations contained in count II even though she did not testify at trial regarding those allegations. Specifically, he points out that although M.S. never testified at trial that defendant made her put her mouth on his penis or what it tasted like, Eastin and Cope were permitted to testify to hearsay statements that M.S. made to them concerning those subjects. Defendant contends that under these circumstances, M.S. was like the declarant in *In re Rolandis G.*, 352 Ill. App. 3d 776, 783, 817 N.E.2d 183, 189-90 (2004), who gave only some preliminary testimony and was thus not "available" as a wit-

ness. Defendant further asserts that because M.S. was unavailable as a witness, she was not subject to cross-examination; accordingly, defendant asserts that his sixth-amendment right to confrontation was violated. For the following reasons, we conclude that the confrontation clause is not an issue under the circumstances of this case.

In *People v. Miles*, 351 Ill. App. 3d 857, 815 N.E.2d 37 (2004), this court addressed a similar argument to that which defendant raises here. We first noted that the United States Supreme Court's decision in *Crawford*, 541 U.S. at 60, 158 L. Ed. 2d at 198, 124 S. Ct. at 1369, rendered the phrases "indicia of reliability" and "particularized guarantees of trustworthiness" irrelevant to confrontation-clause analysis. *Miles*, 351 Ill. App. 3d at 864, 815 N.E.2d at 43. We further noted that the *Crawford* Court held that when " 'the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements.' " *Miles*, 351 Ill. App. 3d at 864, 815 N.E.2d at 44, quoting *Crawford*, 541 U.S. at 60 n.9, 158 L. Ed. 2d at 198 n.9, 124 S. Ct. at 1369 n.9.

Although we adhere to our decision in *Miles*, we now further consider what the *Crawford* Court meant when it wrote about the hearsay declarant appearing for cross-examination at trial. In addition, we determine whether, under the circumstances of this case, the complainant, M.S., "appear[ed] for cross-examination at trial," so that the introduction of her hearsay statements to Eastin and Cope did not implicate the confrontation clause.

In our earlier decision in this case, which was a Rule 23 order, we relied upon the analysis and reasoning contained in this court's opinion in *Sharp* to reject defendant's argument. However, as earlier noted, the supreme court has ordered that opinion vacated. Accordingly, we now discuss the analysis and reasoning we used in *Sharp* (which we believe is still correct) to explain our rejection of defendant's argument. Later, we discuss additional developments in the law since our opinion in *Sharp* in the portion of this opinion concerning the remand from the supreme court.

### a. What It Means To "Appear for Cross-Examination"

The Supreme Court in *Crawford* did not explain what it means for a declarant to "appear for cross-examination." However, the Court's decision in *Crawford* neither overruled nor called into question its two earlier decisions that addressed and resolved this issue: *Delaware v. Fensterer*, 474 U.S. 15, 88 L. Ed. 2d 15, 106 S. Ct. 292 (1985), and *United States v. Owens*, 484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838 (1988).

o

In *Fensterer*, 474 U.S. at 18, 88 L. Ed. 2d at 18, 106 S. Ct. at 293-94, the Supreme Court, in a *per curiam* order, held that the confrontation clause does not require exclusion of expert opinion testimony when the expert is unable to recall the basis for his opinion. In that case, the Delaware Supreme Court reversed the defendant's murder conviction because the prosecution's expert witness could not recall the theory upon which his opinion was based when he testified about cat hairs that were important in linking the defendant to the murder. The Delaware Supreme Court held that, absent the expert's acknowledgment of the basis of his opinion, " 'defense counsel's cross-examination of the [witness] was nothing more than an exercise in futility.' " *Fensterer*, 474 U.S. at 18, 88 L. Ed. 2d at 18, 106 S. Ct. at 293, quoting *Fensterer v. State*, 493 A.2d 959, 964 (Del. 1985). In reversing, the Supreme Court stated as follows: "Generally speaking, the [c]onfrontation [c]lause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis in original.) *Fensterer*, 474 U.S. at 20, 88 L. Ed. 2d at 19, 106 S. Ct. at 294.

Three years later, in *Owens*, the Supreme Court held "that neither the [c]onfrontation [c]lause nor Federal Rule of Evidence 802 is violated by admission of an identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis for the identification." *Owens*, 484 U.S. at 564, 98 L. Ed. 2d at 961, 108 S. Ct. at 845. In that case, the defendant was charged with attacking and brutally beating a correctional counselor at a federal prison. As a result of his injuries, the victim's memory was severely impaired. Three weeks after the attack, the victim, although still hospitalized, had sufficiently improved to be interviewed by an FBI agent. During the interview, the victim described the attack, named the defendant as his attacker, and identified him from an array of photographs.

At the defendant's trial, the victim testified that he clearly remembered identifying the defendant as his assailant during his interview with the FBI agent but conceded that he could not then remember seeing his assailant at the time of the attack. Further, despite evidence that he had received numerous visitors during his hospitalization, he was unable to remember any of them except the FBI agent to whom he identified the defendant, and he could not remember whether any of the other visitors had suggested that the defendant was the assailant. Efforts to refresh his recollection were not successful. The Ninth Circuit Court of Appeals reversed the defendant's conviction, but the Supreme Court reversed that court and reinstated it. In doing so, the Court reaffirmed what it said in *Fensterer*, writing as follows:

"The dangers associated with hearsay inspired the Court of Appeals in the present case to believe that the [c]onstitution required the testimony to be examined for 'indicia of reliability' [citation] or 'particularized guarantees of trustworthiness' [citation]. We do not think such an inquiry is called for when a hearsay declarant is present at trial and subject to unrestricted cross-examination. In that situation, as the Court recognized in [*California v. Green*, 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970)], the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements. [Citation.] We do not think that a constitutional line drawn by the [c]onfrontation [c]lause falls between a forgetful witness' live testimony that he once believed this defendant to be the perpetrator of the crime, and the introduction of the witness' earlier statement to that effect." *Owens*, 44 U.S. at 560, 98 L. Ed. 2d at 958-59, 108 S. Ct. at 843.

The *Owens* Court also rejected the defendant's argument that the Court of Appeals' decision should be affirmed under Federal Rule of Evidence 802, which generally excludes hearsay. The Supreme Court concluded that the witness was "subject to cross-examination" concerning the prior identification, as that phrase was used in Federal Rule of Evidence 801(d)(1)(C). In so concluding, the Court stated as follows:

"It seems to us that the more natural reading of 'subject to cross-examination concerning the statement' includes what was available here. *Ordinarily a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions.*" (Emphasis added.) *Owens*, 484 U.S. at 561, 98 L. Ed. 2d at 959, 108 S. Ct. at 844.

In *People v. Flores*, 128 Ill. 2d 66, 90, 538 N.E.2d 481, 490 (1989), the Supreme Court of Illinois followed the analysis of the United States Supreme Court in *Fensterer* and *Owens* by rejecting the defendant's argument that a witness's professed memory loss as to the content of a conversation he had with the defendant deprived defense counsel of an opportunity to cross-examine the witness concerning his prior testimony (which was admitted under section 115—10.1 of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1)). The *Flores* court wrote, in pertinent part, as follows:

"The confrontation clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination. [*Fensterer*, 474 U.S. at 20, 88 L. Ed. 2d at 19, 106 S. Ct. at 294; *Green*, 399 U.S. at 158, 26 L. Ed. 2d at 497, 90 S. Ct. at 1935.] Contrary to the defendant's assertions, a gap in the witness' recollection concerning the content of a prior statement does not

necessarily preclude an opportunity for effective cross-examination. See [*Owens*], 484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838 ***." *Flores*, 128 Ill. 2d at 88, 538 N.E.2d at 489.

See also *People v. Redd*, 135 Ill. 2d 252, 310, 553 N.E.2d 316, 342 (1990), where the supreme court cited *Owens*, *Green*, and *Flores* and wrote the following: "As long as the [hearsay] declarant is actually testifying as a witness and is subject to full and effective cross-examination, then the confrontation clause is not violated by admitting the out-of-court statement of the declarant."

### b. M.S. "Appeared" for Cross-Examination at Defendant's Trial

■ M.S., who was then seven years old, testified at defendant's October 2005 trial at some length, although hesitantly, regarding defendant's sexual conduct with her. She said repeatedly that he put his private part in her bottom, but she did not describe any other sexual conduct by him. Specifically, she did not testify about defendant's making her put her mouth on his private part, although she spoke about that to both Eastin and Cope.

On cross-examination, M.S. answered all of the questions put to her by defense counsel. However, defense counsel made no attempt to cross-examine M.S. regarding whether his client ever made her put her mouth on his private part.

Despite M.S.'s apparent unwillingness or inability to testify on direct examination about defendant's making her put her mouth on his private part, this record demonstrates that M.S. "appeared" for cross-examination at trial within the meaning of *Crawford* and the confrontation clause. The key inquiry is whether she was present for cross-examination and answered questions asked of her by defense counsel. Because she was present for cross-examination and answered defense counsel's questions, the confrontation clause places absolutely no constraints on the use of M.S.'s prior statements to Eastin and Cope. (Because M.S. answered defense counsel's questions on cross-examination, we need not decide what the legal consequences would be, if any, if she had instead answered some, but not all, of those questions.) In other words, the question of the admissibility of those prior statements must be measured *only* by whether they meet the requirements of section 115—10 of the Code (725 ILCS 5/115—10 (West 2004)). For purposes of the confrontation clause, because M.S. "appeared" for cross-examination at trial within the meaning of *Crawford*, any of her prior statements offered at trial is a nonevent.

### C. The Trial Court's Failure To Instruct the Jury With IPI Criminal 4th No. 11.66

■ Last, defendant argues that the trial court erred by failing to give IPI Criminal 4th No. 11.66 despite the hearsay testimony of Eas-

tin, Gano, and Cope. Defendant concedes that he never asked the court to give this instruction but contends that the court's failure to do so constituted plain error. We disagree.

Section 115—10(c) of the Code requires the trial court to instruct the jury regarding any statement that the court is admitting pursuant to that section. 725 ILCS 5/115—10(c) (West 2004). IPI Criminal 4th No. 11.66 was drafted to achieve that goal.

As the State points out, defendant's claim provides only half the story. In fact, although the trial court failed to give IPI Criminal 4th No. 11.66 at the conclusion of the trial with all of the other instructions it provided the jury, the court did give that instruction orally three times to the jury after the testimony of each of the three witnesses who testified about M.S.'s hearsay statements. Thus, this is hardly a case in which the jury never heard the cautionary remarks of IPI Criminal 4th No. 11.66. Instead, the jury heard that instruction three different times but never received a written version of it at the conclusion of the case.

Clearly, under these circumstances, the plain-error analysis is inapposite. Indeed, one could credibly argue that the jury was better instructed regarding potential concerns about M.S.'s hearsay statements by the court's taking the action it did here than the jury would have been had the court simply instructed the jury at the conclusion of the case, which would be the normal practice.

Nonetheless, defendant is correct that—*as the statute requires*—the trial court should have given IPI Criminal 4th No. 11.66 to the jury with all of the other instructions when the jury retired to deliberate. The court's failure to do so was error. However, under these circumstances, reversal is not warranted.

### III. FURTHER ANALYSIS AFTER REMAND FROM THE SUPREME COURT

The primary issue we addressed in our earlier decision in this case was the admissibility of M.S.'s statements under the confrontation clause as then-recently construed by the United States Supreme Court in *Crawford*. Citing our earlier opinions in *Miles* and *Sharp*, we noted that the *Crawford* Court held that when " 'the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements.' " *Miles*, 354 Ill. App. 3d at 864, 815 N.E.2d at 44, quoting *Crawford*, 541 U.S. at 60 n.9, 158 L. Ed. 2d at 198 n.9, 124 S. Ct. at 1369 n.9. Thus, our focus in that earlier decision was to determine whether M.S. "appeared" for cross-examination at defendant's trial. We held that for purposes of the confrontation clause, because M.S. "appeared" for

cross-examination at trial within the meaning of *Crawford*, any prior statement of M.S. being offered at trial was a nonevent.

## A. The Decision in *Rolandis G.*

In compliance with supreme court's directive, we now analyze its recent decision in *Rolandis G.* to determine whether a different result in this case is warranted. We begin our analysis with a discussion of the appellate court decision that the supreme court reviewed (*Rolandis G.*, 352 Ill. App. 3d 776, 817 N.E.2d 183).

### 1. *The Appellate Court Decision*

The respondent in *Rolandis G.* was adjudicated delinquent after the trial court found him guilty of aggravated criminal sexual assault (720 ILCS 5/12—14(b) (West 2002)) of six-year-old Von J. Respondent initially argued to the appellate court that the trial court erred by admitting, pursuant to section 115—10 of the Code (725 ILCS 5/115—10 (West 2002)), Von's statements about the sexual assault to (1) his mother, (2) a police officer, and (3) a child-advocacy worker. Respondent asserted that under section 115—10, the child victim must either (1) testify at trial (see 725 ILCS 5/115—10(b)(2)(A) (West 2002)) or if the child is unavailable as a witness, (2) present through counsel corroborative evidence of the act which is the subject of the statement (see 725 ILCS 5/115—10(b)(2)(B) (West 2002)). *Rolandis G.*, 352 Ill. App. 3d at 779-80, 817 N.E.2d at 186-87. The respondent asserted that although Von gave some basic background information from the witness stand, he was not "available to testify" within the meaning of section 115—10 because he did not testify about the alleged sexual assault. Accordingly, the respondent contended that the State was obligated to introduce evidence corroborating the out-of-court statements but failed to do so.

While the respondent's appeal was pending, the United States Supreme Court rendered its decision in *Crawford*. The respondent then filed a supplemental brief, arguing that under *Crawford*, testimonial out-of-court statements by an unavailable declarant may not be admitted in a criminal trial unless the declarant was subject to cross-examination when he gave the statements. The respondent also argued that section 115—10 was unconstitutional to the extent that it allowed such statements to be admitted. *Rolandis G.*, 352 Ill. App. 3d at 779, 817 N.E.2d at 187-88.

The appellate court agreed with the respondent's arguments that Von's statements to the officer and the child-advocacy worker were testimonial and, therefore, improperly admitted under *Crawford*. *Rolandis G.*, 352 Ill. App. 3d at 781, 817 N.E.2d at 188. The court added that "[t]o the extent section 115—10 permits the introduction

of such statements, it is unconstitutional." *Rolandis G.*, 352 Ill. App. 3d at 781, 817 N.E.2d at 188.

Although the respondent conceded that Von's statements to his mother were not testimonial hearsay, he nonetheless argued that they should have been excluded under section 115—10 because Von was unavailable within the meaning of that statute and the State did not present corroborating evidence. The appellate court agreed but also concluded that Von's out-of-court statements to his mother were still admissible if the State introduced corroborating evidence. *Rolandis G.*, 352 Ill. App. 3d at 783-84, 817 N.E.2d at 189-90. The court ultimately agreed with the State that it had done so. *Rolandis G.*, 352 Ill. App. 3d at 784, 817 N.E.2d at 190. Accordingly, the court concluded that Von's "statements to his mother were properly admitted under section 115—10 and do not raise any confrontation[-]clause issues." *Rolandis G.*, 352 Ill. App. 3d at 784, 817 N.E.2d at 190. The appellate court nonetheless reversed respondent's adjudication because it concluded that Von's statements to the officer and the child-advocacy worker were improperly admitted into evidence. *Rolandis G.*, 352 Ill. App. 3d at 784, 817 N.E.2d at 190-91.

## 2. *The Supreme Court Decision*

The supreme court granted the State's petition for leave to appeal in *Rolandis G.*, in which the State maintained its primary concerns were for the supreme court to (1) affirm the constitutionality of section 115—10 and (2) consider the proper application of *Crawford* in situations involving young victims of sexual crimes. *Rolandis G.*, 232 Ill. 2d at 22, 902 N.E.2d at 606. The State agreed with the appellate court that (1) Von's statement to his mother was nontestimonial and (2) his statement to the officer was testimonial. However, the State challenged the appellate court's determination that Von's statement to the child-advocacy worker was testimonial. *Rolandis G.*, 232 Ill. 2d at 29, 902 N.E.2d at 609.

The supreme court disagreed with the State regarding Von's statement to the child-advocacy worker and concluded that this statement was testimonial. *Rolandis G.*, 232 Ill. 2d at 36, 902 N.E.2d at 613. The supreme court also rejected the State's argument that respondent forfeited the right to challenge the admission of Von's testimonial hearsay statements on the ground of forfeiture by wrongdoing. *Rolandis G.*, 232 Ill. 2d at 42, 902 N.E.2d at 616-17.

The last matter the supreme court addressed in *Rolandis G.* was the State's claim that the *Crawford* violation was subject to harmless-error review. The supreme court agreed with the State that harmless-error analysis applied to a *Crawford* violation and concluded that the

error was harmless beyond a reasonable doubt because "the properly admitted evidence overwhelmingly supports [respondent's] conviction." *Rolandis G.*, 232 Ill. 2d at 43, 902 N.E.2d at 617.

The supreme court did not address the constitutionality of section 115—10 of the Code. Instead, the court noted that the State withdrew that portion of its brief because the appellate court held only that it was unconstitutional "as applied." *Rolandis G.*, 232 Ill. 2d at 47, 902 N.E.2d at 619.

### 3. *The Application of the Supreme Court's Decision in Rolandis G. to This Case*

Consistent with the supreme court's directive that we reconsider our decision in this case in light of its opinion in *Rolandis G.*, we have discussed the earlier decision of the appellate court in that case to ensure we understood the context in which the supreme court rendered its opinion. After reconsidering our decision in this case, we conclude that *Rolandis G.* does not warrant a different result.

As earlier stated, the primary focus of our initial decision in this case was whether M.S. "appeared" for cross-examination at defendant's trial within the meaning of *Crawford*. We concluded in our earlier decision that she did. Although *Rolandis G.* addressed several important aspects of the Supreme Court's decision in *Crawford*, it did not address that issue. An explanation for why the supreme court did not address that issue is because the State conceded it at the appellate court. As the supreme court noted in describing the State's posture before the appellate court: "On appeal, the State conceded that Von was not available to testify at trial." *Rolandis G.*, 232 Ill. 2d at 22, 902 N.E.2d at 605.

### B. When the Admission of Hearsay Testimony Is a Nonevent Under the Confrontation Clause

Our earlier decision in this case was a Rule 23 order because, in large measure, we relied upon this court's opinion in *Sharp*, which, as noted, has been ordered vacated by the supreme court for further consideration in light of *Rolandis G.* Thus, because we could rely on *Sharp* as a basis for our conclusion, we have now incorporated most of *Sharp*'s analysis.

Although the Supreme Court in *Rolandis G.* did not address the issue of what it means to "appear for cross-examination" under *Crawford*, several other courts have done so since March 2005, when *Sharp* was filed. Accordingly, as part of our reconsideration in this case, we will review decisions rendered over the last four years addressing that issue.

Again, this issue is critically important because if the hearsay declarant whose statements are at issue testifies at a defendant's trial and "appears for cross-examination," then the issue of whether his out-of-court statement constitutes testimonial hearsay does not matter. As we stated earlier, for the purposes of the confrontation clause, the offer of the hearsay declarant's statement at trial becomes a nonevent. This point becomes more clear when considered in the context of the admission of a hearsay statement by a recalcitrant witness who testifies in a murder case.

At first glance, the admission of a hearsay statement by a recalcitrant witness who testifies in a murder case may seem to have little in common with the admission of a hearsay statement by a child victim who testifies in a sex offense case. However, these situations share one crucial connection: they are both constitutional "nonevents" under the confrontation clause. In both situations, the confrontation clause does not bar the hearsay testimony. Instead, the admissibility of that testimony is simply a matter of state evidentiary law.

The constitutional similarity between these two situations is best shown by examining them via two hypothetical scenarios, beginning with the murder case.

### 1. *The Murder Case*

The State charged Smith with first degree murder for shooting the victim in a tavern parking lot. The State calls Brown to testify, and he acknowledges that he was present at the tavern on the night of the shooting and talked to police officers. However, Brown also testifies that because he was high on cocaine and alcohol that night, he does not remember the events very well. He now claims he neither remembers being in the parking lot when the shooting occurred nor recalls giving a written statement to the police concerning the shooting.

The prosecutor then confronts Brown with his statement concerning the shooting, which the police wrote out and Brown signed. In that statement, Brown said that he saw Smith leave the tavern after Smith and the victim argued and pushed each other. Thirty minutes later, Brown went out to the tavern parking lot and heard Smith yell at the victim. He then saw Smith pull out a handgun and fire several shots at the victim, who collapsed to the pavement as Smith ran away.

When confronted with this document, Brown claims that (1) nothing contained in it was true, (2) he never saw the shooting, and (3) he never read the statement before he signed it. Instead, Brown contends that the police wrote out the statement, thrust it in his face, and told him that he better sign it. He claims he did not even know what he was signing.

When the State moves to admit the document, pursuant to section 115—10.1 of the Code (725 ILCS 5/115—10.1 (West 2006)), defense counsel objects on the ground that Smith's sixth-amendment right to confrontation would be violated by admitting this evidence. Counsel argues, "How am I supposed to meaningfully cross-examine this witness when he denies all aspects of what the State is attempting to prove by his earlier statements, or he claims to have no memory of these matters?" The trial court overrules counsel's objection and admits the prior inconsistent statement as substantive evidence even though counsel is correct that Brown did not testify as to the substance of the written statement.

## 2. *The Sex Offense Case*

Jones is on trial for the aggravated criminal sexual assault of his six-year-old stepdaughter, Amy. Prior to trial, the court conducted a hearing, pursuant to section 115—10(b)(2)(A) of the Code (725 ILCS 5/115—10(b)(2)(A) (West 2006)), to determine the admissibility of statements Amy made about Jones' conduct to her teacher, a school social worker, and a DCFS investigator. In Amy's statement to her teacher, she described how Jones would get into bed with her when her mother was gone and probe her private parts. After the teacher called Amy's mother, Amy told the same thing to her mother with the teacher present, and Amy added (using a child's terms) that Jones had sexual intercourse with her on several occasions, including at her grandmother's house. Later that day, Amy spoke to the DCFS investigator, telling her the same story and adding some additional details as to how often and where the sexual conduct occurred.

At the conclusion of the section 115—10 hearing, the trial court ruled that the statutory criteria for admissibility of these hearsay statements had been met and the State could use them at trial if Amy testifies. When Amy does testify, she answers questions about her family, school, and home life but does not testify about Jones' sexual conduct. She is initially hesitant to answer any questions about sexual conduct and then later claims that she does not remember if anything happened. Still later, she denies that Jones ever had any sexual contact with her at her grandmother's house.

When the State offers into evidence Amy's three earlier statements that had been the subject of the section 115—10 hearing, Jones' defense counsel objects on the ground that admission of those statements would violate Jones' sixth-amendment right to confront and cross-examine the witnesses against him. Counsel argues that being permitted merely to cross-examine Amy about her day-to-day life constitutes no real opportunity to cross-examine, given that Amy

either claimed not to remember instances of sexual conduct or, regarding her grandmother's house, denied that they ever occurred. Defense counsel then argues to the court, "How am I supposed to meaningfully cross-examine this witness when she denies all aspects of what the State is attempting to prove by her earlier statements, or she claims to have no memory of these matters?" The trial court overrules counsel's objection and admits Amy's earlier statements even though counsel is correct that Amy did not testify as to the substance of those earlier statements. (We note that this hypothetical has particular resonance in the case before us, given that defendant contends on appeal that because M.S. did not testify regarding the details of defendant's making her put her mouth on his penis, she was essentially "unavailable" for cross-examination. Specifically, defendant argues, "How can a defense attorney cross-examine a witness about the details of an offense if the witness does not give any details of the offense? In addition, the defense attorney should not be forced into proving the State's case by asking questions about an incident that the declarant has not testified to on direct examination.")

### 3. *The Nonevents*

Constitutionally, the issue presented by the State's offer to admit the hearsay testimony of Brown and Amy is identical. And each is a nonevent under the confrontation clause.

The issues are constitutionally identical because in each case, the State is seeking to offer hearsay testimony—that is, an out-of-court statement offered to prove the truth of the matter asserted—and the hearsay declarant is on the witness stand. Normally, given that the fundamental reason for excluding hearsay is the lack of an opportunity to cross-examine the declarant, the presence of the declarant on the witness stand might reduce concerns about the prejudice suffered by the party against whom this evidence is offered. However, in each of these cases, although the hearsay declarant is on the witness stand, the declarant does not testify as to the substance of the declarant's hearsay testimony that is damaging to the defendant's case. Indeed, both Brown and Amy are testifying that some or all of the hearsay testimony attributed to them is not true.

What does the sixth amendment confrontation clause say about the admissibility of the hearsay in these cases? The answer is that the confrontation clause says nothing. Under the sixth amendment, the admission of the hearsay statements in each of these examples is a nonevent.

(Since *Crawford* and the Supreme Court's later decision in *Davis v. Washington*, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006),

most courts applying *Crawford* and *Davis* have been concerned with determining whether a statement at issue constitutes testimonial hearsay. For a comprehensive and well-reasoned analysis of what constitutes testimonial hearsay, including a thoughtful discussion of *Rolandis G.*, see D. Shanes, *Confronting Testimonial Hearsay: Understanding the New Confrontation Clause*, 40 Loy. U. Chi. L.J. 879 (2009).)

Whether a hearsay statement offered by the State in a criminal trial constitutes testimonial hearsay may not matter. That is because, as the *Crawford* Court explained, when "the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 198 n.9, 124 S. Ct. at 1369 n.9.

### 4. *Post-Crawford Illinois Cases Dealing With a Defendant's Opportunity To Cross-Examine*

#### a. The Supreme Court of Illinois

The continued importance of the Supreme Court's holdings in *Fensterer* and *Owens* regarding the confrontation clause is shown by the decision of the Supreme Court of Illinois in *People v. Lewis*, 223 Ill. 2d 393, 860 N.E.2d 299 (2006). At issue in *Lewis* was hearsay testimony of identification that the State offered pursuant to section 115—12 of the Code (725 ILCS 5/115—12 (West 2002)). As the supreme court noted in *Lewis*, for such hearsay testimony to be admissible, "[t]he plain language of section 115—12 requires the declarant to testify and be subject to cross-examination on the identification statement. [Citation.] There are no other requirements for admission of a third party's testimony about the declarant's out-of-court identification." *Lewis*, 223 Ill. 2d at 402-03, 860 N.E.2d at 305.

The Supreme Court of Illinois, noting that section 115—12 is based upon Federal Rule of Evidence 801(d)(1)(C), also wrote that, when construing that rule, "the [United States] Supreme Court has held that a witness is 'subject to cross-examination' when he or she is placed on the witness stand, under oath, and responds willingly to questions. [*Owens*, 484 U.S. at 561, 98 L. Ed. 2d at 959, 108 S. Ct. at 844]." *Lewis*, 223 Ill. 2d at 404, 860 N.E.2d at 306.

In *People v. Sutton*, 233 Ill. 2d 89 (2009), the Supreme Court of Illinois removed any doubt about the application of the holding in *Owens* to determine whether, under *Crawford*, a witness is "available" for cross-examination. In *Sutton*, the supreme court first determined that the hearsay statements at issue made by a person who had been shot to a police officer in an ambulance were testimonial. *Sutton*, 233 Ill.

2d at 109-10. Nonetheless, the supreme court further concluded that the statements were admissible and not subject to *Crawford* because the witness was "available" for cross-examination. *Sutton*, 233 Ill. 2d at 112. The court so concluded despite defendant's argument that the witness should be viewed as unavailable for cross-examination because all of his statements were influenced by hypnosis, specifically contending that the witness's "current memories were 'restored' as the result of hypnosis." *Sutton*, 233 Ill. 2d at 121. The supreme court disagreed and explained its decision by referring to *Owens*, as follows:

> "The Court explained that the confrontation clause gives an accused the right to be confronted with the witnesses against him, which has been read as securing an adequate opportunity to cross-examine adverse witnesses. *Owens*, 484 U.S. at 557, 98 L. Ed. 2d at 956, 109 S. Ct. at 841. The Court held, however, that an opportunity for effective cross-examination is not denied when a witness's past belief is introduced, and he is unable to recollect the reason for that past belief. *Owens*, 484 U.S. at 559, 98 L. Ed. 2d at 958, 108 S. Ct. at 842. The Court noted that although the foundation for the belief cannot be effectively elicited, other means of impugning the belief are available. *Owens*, 484 U.S. at 559, 98 L. Ed. 2d at 958, 108 S. Ct. at 842. Further, '[t]he weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee.' *Owens*, 484 U.S. at 560, 98 L. Ed. 2d at 958, 108 S. Ct. at 843.
>
> The Court additionally held that its analysis was not altered by the fact that the testimony at issue involved an out-of-court statement that would traditionally be characterized as hearsay, and declined to require the testimony be examined for indicia of reliability, concluding that such an inquiry was not required when the hearsay declarant is present at trial and subject to unrestricted cross-examination. *Owens*, 484 U.S. at 560, 98 L. Ed. 2d at 958, 108 S. Ct. at 843. In that case, 'the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements.' *Owens*, 484 U.S. at 560, 98 L. Ed. 2d at 958-59, 108 S. Ct. at 843." *Sutton*, 233 Ill. 2d at 121-22.

We also deem *Sutton* supportive of our conclusion that the supreme court's decision in *Rolandis G.* did not address the question of what it means, under *Crawford*, for a witness to "appear" for cross-examination. In *Sutton*, the supreme court referred to *Rolandis G.* solely in the context of reaffirming its earlier position in *People v. Stechly*, 225 Ill. 2d 246, 289, 870 N.E.2d 333, 359 (2007), that when deciding whether statements that are not the product of law-

enforcement interrogation are testimonial, the proper focus is on the intent of the declarant, and the inquiry should be whether the objective circumstances would lead a reasonable person to conclude that his statements could be used against the defendant. *Sutton*, 233 Ill. 2d at 111. Clearly, given the supreme court's extensive discussion in *Sutton* about what it means for a witness, under *Crawford*, to "appear" for cross-examination, the supreme court would have mentioned its very recent decision in *Rolandis G.* if the court believed that decision touched upon this issue. Its silence demonstrates that the court did not so believe.

### b. The Illinois Appellate Court

Earlier, we applied *Fensterer* and *Owens* to conclude that M.S., the child victim in this sex-offense case, "appeared" for cross-examination at trial, thereby rendering admissible under *Crawford* her hearsay statements about defendant's conduct. We so concluded even though M.S. did not testify at trial as to the substance of one of her hearsay statements, a situation similar to the hypothetical scenario of the child-victim's testimony discussed earlier.

In *People v. Bueno*, 358 Ill. App. 3d 143, 153-54, 829 N.E.2d 402, 410-11 (2005), the Second District Appellate Court cited *Sharp* approvingly regarding its analysis of when a hearsay declarant is present for cross-examination under *Fensterer* and *Owens*. The *Bueno* court concluded that the trial court properly admitted a witness's prior inconsistent statement pursuant to section 115—10.1 of the Code at the defendant's felony trial. In doing so, the court rejected the defendant's challenge (based upon *Crawford*) that the witness, when testifying, never acknowledged that he made the statement. *Bueno*, 358 Ill. App. 3d at 154-56, 829 N.E.2d at 411-12.

More recently, in *People v. Hampton*, 387 Ill. App. 3d 206, 217, 899 N.E.2d 532, 542 (2008), the First District also cited *Sharp* approvingly for what it means to "appear for cross-examination" for purposes of the confrontation clause under *Crawford*. In addition to *Sharp* and *Bueno*, the *Hampton* court also cited approvingly two earlier First District cases, *People v. Desantiago*, 365 Ill. App. 3d 855, 850 N.E.2d 866 (2006), and *People v. Bakr*, 373 Ill. App. 3d 981, 869 N.E.2d 1010 (2007), that rejected similar *Crawford* claims. The *Hampton* court noted that in *Desantiago*, the witness testified at trial, which permitted the defendant to cross-examine him regarding his inconsistent testimony, drug and alcohol use on the day of the incident, and bad memory. *Hampton*, 387 Ill. App. 3d at 218, 899 N.E.2d at 543.

In *Bakr*, two codefendants testified as State witnesses. One stated he could not recall his conversations with police officers or several

parts of his videotaped statement. The second codefendant stated that he could not remember the details of the murder, his conversations with police, or his videotaped statement. *Hampton*, 387 Ill. App. 3d at 218-19, 899 N.E.2d at 543. After the videotaped statements of both codefendants were admitted over the defendant's objections, he argued on appeal that his constitutional right to confront witnesses was violated. Specifically, like the murder hypothetical discussed earlier, the defendant argued that because both of the codefendants testified that they did not recall making the videotaped statements, he was unable to cross-examine them. Relying on *Desantiago*, the *Bakr* court concluded that "no confrontation clause problems exist simply because a declarant's alleged memory problems precluded the declarant from being cross-examined to the extent that defense counsel would have liked." *Bakr*, 373 Ill. App. 3d at 987, 869 N.E.2d at 1016. The *Hampton* court noted that in *Bakr*, the court "found that defense counsel was able to cross-examine the witnesses as to their motive to lie and bias and was able to impeach their credibility. The [*Bakr*] court concluded this cross-examination satisfied the confrontation clause." *Hampton*, 387 Ill. App. 3d at 219, 899 N.E.2d at 543.

The defendant in *Hampton* attempted to distinguish *Bakr*, *Desantiago*, *Bueno*, and *Sharp* by arguing that those cases "did not address '*Crawford*'s requirement that the witness be available at trial to "defend and explain" the prior statement.' " *Hampton*, 387 Ill. App. 3d at 219, 899 N.E.2d at 543. The *Hampton* court addressed this argument, as follows:

> "Defendant is referring to the following statement from *Crawford*:
> 'Finally, we reiterate that, when the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements. [Citation.] It is therefore irrelevant that the reliability of some out-of-court statements " 'cannot be replicated, even if the declarant testifies to the same matters in court.' " [Citation.] The [c]lause does not bar admission of a statement so long as the declarant is present at trial to *defend or explain* it.' (Emphasis added.) *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9.

However, the Supreme Court did not elaborate to what extent the witness must be able to 'defend or explain' the prior statements nor does defendant cite any authority in which that phrase places additional requirements on cross-examination beyond the holdings of the aforementioned cases. Here, [the witness whose prior inconsistent statement was admitted under section 115—10.1 of the Code (725 ILCS 5/115—10.1 (West 2004))] appeared for cross-examination and answered all questions posed, even though his

professed memory loss prevented him from recalling details from the shooting and his testimony. We cannot agree with defendant's argument that his confrontation rights were violated because he was unable to cross-examine [the witness] to the extent he would have liked." *Hampton,* 387 Ill. App. 3d at 219, 899 N.E.2d at 543-44.

We agree with the *Hampton* court's analysis.

*Bueno* and *Hampton* are not the only Illinois cases that cite *Sharp* approvingly regarding its analysis of when the hearsay declarant "appears" for cross-examination. Others include two earlier decisions of the Second District Appellate Court: *People v. Monroe,* 366 Ill. App. 3d 1080, 1087-88, 852 N.E.2d 888, 897-98 (2006), and *People v. Johnson,* 363 Ill. App. 3d 1060, 1071, 845 N.E.2d 645, 655 (2005) (citing *Sharp* and holding that "when a child[-]sex[-]abuse victim appears at trial and is subject to cross-examination, any prior statement of the victim being offered pursuant to section 115—10 of the Code is a nonevent" under the confrontation clause). See also the earlier Fourth District cases of *Reed,* 361 Ill. App. 3d at 1002, 838 N.E.2d at 334, and *People v. Carter,* 362 Ill. App. 3d 1180, 1193, 841 N.E.2d 1052, 1063 (2005).

To date, the only Illinois case disagreeing with *Sharp* is a decision of the Second District in *People v. Learn,* 371 Ill. App. 3d 701, 709, 863 N.E.2d 1173, 1179 (2007), *vacated,* 231 Ill. 2d 644, 899 N.E.2d 1076 (2009) (nonprecedential supervisory order on denial of petition for leave to appeal). However, in doing so, the *Learn* court did not mention either (1) the United States Supreme Court's decisions in *Fensterer* and *Owens* or (2) the earlier Second District decisions in *Bueno, Monroe,* and *Johnson* that embraced *Sharp*'s analysis.

Over the last 20 years, many Illinois cases have rejected defense arguments against the substantive admissibility of a witness's prior inconsistent statements (pursuant to section 115—10.1 of the Code) under circumstances similar to those described in the murder-case scenario discussed earlier. A partial list is the following: *People v. Eastling,* 386 Ill. App. 3d 884, 888, 897 N.E.2d 340, 344 (1st Dist. 2008); *People v. Salazar,* 126 Ill. 2d 424, 458, 535 N.E.2d 766, 780 (1988); *People v. Fauber,* 266 Ill. App. 3d 381, 391, 640 N.E.2d 689, 695 (4th Dist. 1994); *Desantiago,* 365 Ill. App. 3d at 870, 850 N.E.2d at 879 (First District); *People v. Curtis,* 296 Ill. App. 3d 991, 999, 696 N.E.2d 372, 378 (4th Dist. 1998); *People v. Zizzo,* 301 Ill. App. 3d 481, 488-89, 703 N.E.2d 546, 551 (2d Dist. 1998); *People v. Morrow,* 303 Ill. App. 3d 671, 675, 708 N.E.2d 430, 435 (1st Dist. 1999); *People v. Williams,* 332 Ill. App. 3d 693, 696, 773 N.E.2d 1238, 1241 (3d Dist. 2002); *People v. Craig,* 334 Ill. App. 3d 426, 439, 778 N.E.2d 192, 203 (1st Dist. 2002); *People v. Thomas,* 354 Ill. App. 3d 868, 877, 821 N.E.2d 628, 636 (1st

Dist. 2004); *People v. Watkins*, 368 Ill. App. 3d 927, 933, 859 N.E.2d 265, 270 (1st Dist. 2006); *Bakr*, 373 Ill. App. 3d at 987, 869 N.E.2d at 1016 (First District); *People v. Fields*, 285 Ill. App. 3d 1020, 1027, 675 N.E.2d 180, 185 (1st Dist. 1996); *People v. Edwards*, 309 Ill. App. 3d 447, 450, 722 N.E.2d 258, 260 (4th Dist. 1999); *People v. Speed*, 315 Ill. App. 3d 511, 516, 731 N.E.2d 1276, 1280 (4th Dist. 2000); *People v. Modrowski*, 296 Ill. App. 3d 735, 746, 696 N.E.2d 28, 36 (1st Dist. 1998); *People v. Lee*, 335 Ill. App. 3d 659, 671, 781 N.E.2d 310, 320 (1st Dist. 2002); *People v. Lee*, 243 Ill. App. 3d 745, 749, 612 N.E.2d 922, 924 (3d Dist. 1993); *People v. Zurita*, 295 Ill. App. 3d 1072, 1077, 693 N.E.2d 887, 891 (2d Dist. 1998); *People v. Hernandez*, 319 Ill. App. 3d 520, 532, 745 N.E.2d 673, 684 (3d Dist. 2001); *People v. Morales*, 281 Ill. App. 3d 695, 700, 666 N.E.2d 839, 842 (1st Dist. 1996); *People v. Wheatley*, 187 Ill. App. 3d 371, 381, 543 N.E.2d 259, 265 (1st Dist. 1989); *People v. Martinez*, 348 Ill. App. 3d 521, 534-35, 810 N.E.2d 199, 211-12 (1st Dist. 2004); *People v. Watkins*, 368 Ill. App. 3d 927, 930-31, 859 N.E.2d 265, 267-69 (1st Dist. 2006).

#### c. The Seventh Circuit Court of Appeals

In *Cookson v. Schwartz*, 556 F.3d 647 (7th Cir. 2009), the Seventh Circuit Court of Appeals recently affirmed the denial of a defendant's petition for writ of *habeas corpus* arising out of an Illinois state conviction. The Seventh Circuit's ruling, which is pertinent to this case, is best understood in context of the earlier decisions made by Illinois state courts regarding this same defendant, Donald Cookson.

Cookson was convicted of predatory criminal sexual assault of a child and aggravated criminal sexual abuse (720 ILCS 5/12—14.1(a)(1), 12—16(c)(1)(i) (West 1998)), and the trial court sentenced him to 25 years in prison. He appealed, in part, on the ground that the trial court committed an abuse of discretion by admitting evidence of the out-of-court statements of the eight-year-old complainant, A.C., pursuant to section 115—10 of the Code (725 ILCS 5/115—10 (West 2000)). This court rejected that argument and affirmed. *People v. Cookson*, 335 Ill. App. 3d 786, 792, 780 N.E.2d 807, 812 (2002).

The Supreme Court of Illinois granted Cookson's petition for leave to appeal. While his case was pending before that court, the United States Supreme Court rendered its decision in *Crawford*. Cookson then filed a supplemental brief, contending that the admission of A.C.'s testimony violated his confrontation-clause rights. The supreme court rejected this argument, and its entire discussion on that point is the following:

> "In *Crawford*, the Court declared the confrontation clause 'does not bar admission of a statement so long as the declarant is present

in court to defend or explain it.' *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9. Our statutory requirement that the child be available to testify at the proceeding (see 725 ILCS 5/115—10(b)(2)(A) (West 1998)) comports with this limitation. A.C.'s testimony does not run afoul of *Crawford*." *People v. Cookson*, 215 Ill. 2d 194, 204, 830 N.E.2d 484, 490 (2005).

Cookson filed a petition for writ of *habeas corpus* with the United States District Court for the Central District of Illinois. That court denied the petition, but the Seventh Circuit Court of Appeals granted Cookson a certificate of appealability and reviewed the action of the district court. *Cookson*, 556 F.3d at 648.

The primary issue the Seventh Circuit addressed was Cookson's contention that the admission of A.C.'s hearsay statements under section 115—10 of the Code to Detective Richard Wiese and DCFS investigator Timothy Gonzalez violated the confrontation clause "because A.C. could not remember making the statements—or, indeed, ever speaking to Wiese and Gonzalez at all—and therefore [Cookson] could not cross-examine her about them." *Cookson*, 556 F.3d at 650. The court noted that Cookson relied upon *Crawford* for his assertion that "although A.C. testified at trial, she was not 'available,' for [c]onfrontation [c]lause purposes, because she did not remember making the statements and therefore could not be cross-examined about them." *Cookson*, 556 F.3d at 650. In support of Cookson's contention, he cited *dicta* in two federal court of appeals opinions. In the first, *United States v. DiCaro*, 772 F.2d 1314, 1323 (7th Cir. 1985), the court wrote that "a witness's total amnesia concerning a prior statement will often make him not subject to cross-examination" for confrontation clause purposes. In the second, *United States v. Spotted War Bonnet*, 933 F.2d 1471, 1474 (8th Cir. 1991), the court opined that if a child witness "is so young that she cannot be cross-examined at all, or if she is 'simply too young and too frightened to be subject to a thorough direct or cross-examination' [citation]," the child's mere presence on the witness stand would not satisfy the confrontation clause's availability requirement.

The State responded that no confrontation problem was present because Cookson was able to cross-examine A.C. at trial. The State pointed to language in *Crawford* stating that "when the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9. The Seventh Circuit made the following comment with regard to the State's position:

"That language is not dispositive, however, because the Supreme Court elaborated on this statement two sentences later: '[T]he Clause does not bar admission of a statement so long as the declarant is present at trial *to defend or explain it.*' [Citation.] (emphasis added). Mr. Cookson's contention, of course, is that A.C.'s lack of memory made her unable to defend or explain her statements." *Cookson*, 556 F.3d at 651.

(We note that this contention is essentially the same as the one the defendant raised in *Hampton*, which that court rejected in an explanation we earlier quoted approvingly.)

Ultimately, the Seventh Circuit cited *Owens* and its earlier decision in *United States v. Keeter*, 130 F.3d 297 (7th Cir. 1997), in rejecting Cookson's argument. In *Keeter*, a witness signed an affidavit before trial that implicated the defendant in a scheme to sell amphetamine in prison. At trial, however, the witness feigned amnesia and claimed to have no memory of making the statement or of the events described in the statement. The trial court allowed the prosecution to enter the affidavit into evidence. On appeal, the Seventh Circuit held that admission of the affidavit did not violate the confrontation clause even though the defendant was unable to question the witness about his statement. *Keeter*, 130 F.3d at 302.

The Seventh Circuit explained its rejection of *Cookson*'s argument, as follows:

"Mr. Cookson actually had a much better chance to conduct an effective cross-examination than did the defendants in [*Owens* and *Keeter*]. A.C., unlike the witnesses in *Owens* and *Keeter*, could remember the underlying events described in the hearsay statements. To the extent that A.C.'s testimony at trial was consistent with her testimony in her statements to Wiese and Gonzalez, cross-examination on the trial testimony—which Mr. Cookson had a full opportunity to conduct—was effectively cross-examination on the hearsay statements as well. And to the extent that her testimony was inconsistent with her earlier statements, Mr. Cookson was free to point out the inconsistencies to the jury. In sum, Mr. Cookson had ample opportunity to confront his accuser at trial. If the defendants in *Owens* and *Keeter* had a constitutionally adequate opportunity to cross-examine the witnesses against them, then Mr. Cookson certainly did as well." *Cookson*, 556 F.3d at 652.

We deem the Seventh Circuit's decision in *Cookson* to be supportive of our conclusion in this case. As in *Cookson*, to the extent that M.S.'s testimony was inconsistent with her earlier statements to Easton and Cope, which were admitted pursuant to section 115—10 of the Code, defendant was free to point out the inconsistencies to the jury. Similarly, we conclude that if the defendants in *Owens* and *Keeter*

had a constitutionally adequate opportunity to cross-examine the witnesses against them, then this defendant certainly did as well.

5. *Decisions From Other States Citing Sharp Approvingly*

*Sharp* has also been cited approvingly by several out-of-state courts. See *State v. Pierre*, 277 Conn. 42, 82-83, 890 A.2d 474, 499-500 (2006) (citing *Sharp* for the proposition that "[the] refusal or inability by the witness to recall the events recorded in a prior statement does not render the witness unavailable for purposes of cross-examination"); *State v. Salazar*, 216 Ariz. 316, 319, 166 P.3d 107, 110 (2007); *State v. Real*, 214 Ariz. 232, 235, 150 P.3d 805, 808 (App. 2007) (quoting *State v. Ring*, 204 Ariz. 534, 557, 65 P.3d 915, 938 (2003), for the proposition that the court " 'cannot ignore a Supreme Court decision interpreting federal law unless the Court expressly overrules or casts cognizable doubt on that decision,' " and quoting *Sharp*, 355 Ill. App. 3d at 792, 825 N.E.2d at 711, for the proposition "*Crawford* 'neither overruled nor called into question' *Fensterer* or *Owens*"); *State v. Fields*, 115 Haw. 503, 520, 168 P.3d 955, 972 (2007); *State v. Legere*, 157 N.H. 746, 755, 958 A.2d 969, 978 (2008) (citing *Sharp* in its holding that "like most courts that have considered the issue, we conclude that when a witness is presented for cross-examination, the [c]onfrontation [c]lause does not bar the admission of a prior statement"); *State v. Stokes*, 381 S.C. 390, 403 n.13, 673 S.E.2d 434, 440 n.13 (2009); *State v. Burr*, 392 N.J. Super. 538, 568, 921 A.2d 1135, 1154 (2007); *State v. Holliday*, 745 N.W.2d 556, 566 n.5 (Minn. 2008) (the Minnesota Supreme Court quotes the Connecticut Supreme Court in *Pierre* for its quotation from *Sharp* that *Crawford* neither overruled nor called into question *Fensterer* and *Owens*); *Abney v. Commonwealth*, 51 Va. App. 337, 351 n.3, 657 S.E.2d 796, 803 n.3 (2008); *State v. Rockette*, 2006 WI App. 103, ¶26, 299 Wis. 2d 611, ¶26, 718 N.W.2d 269, ¶26 (citing *Sharp* in support of its holding that "a witness's claimed inability to remember earlier statements or the events surrounding those statements does not implicate the requirements of the [c]onfrontation [c]lause under *Crawford*, so long as the witness is present at trial, takes an oath to testify truthfully ***, and answers the questions put him or her during cross-examination"; cites *Fensterer* and *Owens* in support of that holding); *United States v. Rhodes*, 61 M.J. 445, 450 n.27 (2005) (United States Court of Appeals for the Armed Forces cites *Sharp* and writes the following: "Several courts have held that Justice Scalia's opinion for the Court in *Crawford* did not overrule Justice Scalia's opinion for the Court in *Owens*. We agree"); *State v. Price*, 158 Wash. 2d 630, 650, 146 P.3d 1183, 1192 (2006) (citing *Sharp* and holding that "all of the purposes of the

confrontation clause are satisfied even when a witness answers that he or she is unable to recall. Thus, we hold that when a witness is asked questions about the events at issue and about his or her prior statements, but answers that he or she is unable to remember the charged events or the prior statements, this provides the defendant sufficient opportunity for cross-examination to satisfy the confrontation clause. We conclude that a witness' inability to remember does not implicate *Crawford* nor foreclose admission of pretrial statements").

## IV. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State it $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

TURNER and APPLETON, JJ., concur.