THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD D. KITCH, Defendant-Appellant.

Fourth District   No. 4—05—0982

Opinion filed June 25, 2009.

Daniel D. Yuhas and Nancy L. Vincent, both of State Appellate Defender's Office, of Springfield, for appellant.

Teena M. Griffin, State's Attorney, of Rushville (Norbert J. Goetten, Robert J. Biderman, and Anastacia R. Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Following an October 2005 trial, a jury convicted defendant, Richard D. Kitch, of nine counts of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1(a)(1) (West 2000)) and one count of aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1)(i) (West 2002)). The trial court later sentenced him to (1) 9 consecutive natural-life prison terms for predatory criminal sexual assault of a child and (2) a concurrent 14-year extended-term sentence for aggravated criminal sexual abuse.

Defendant appealed, arguing that (1) the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), renders section 115—10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10 (West 2004)) unconstitutional in that it violates the confrontation clause of both the United States and Illinois Constitutions (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8), and (2) the trial court erred by imposing (a) consecutive natural-life prison terms for predatory criminal sexual assault of a child and (b) an extended prison term for aggravated criminal sexual abuse.

In April 2007, this court affirmed defendant's convictions but modified his natural-life prison sentences from consecutive to concurrent terms. *People v. Kitch*, No. 4—05—0982 (April 7, 2008) (unpublished order under Supreme Court Rule 23).

Defendant filed a petition for leave to appeal with the Supreme Court of Illinois. In January 2009, that court denied his petition but also entered the following nonprecedential supervisory order:

"In the exercise of this court's supervisory authority, the Appellate Court, Fourth District, is directed to vacate its order in *People v. Kitch*, No. 4—05—0982 (April 7, 2008). The appellate court is instructed to reconsider its decision in light of this Court's opinion

in *In re Rolandis G.*, [232 Ill. 2d 13, 902 N.E.2d 600 (2008)], to determine whether a different result is warranted." *People v. Kitch*, 231 Ill. 2d 643, 899 N.E.2d 1077 (2009) (nonprecedential supervisory order on denial of petition for leave to appeal).

In accordance with the supreme court's directive, we vacate our earlier decision in this case. Further, after reconsidering this case in light of *Rolandis G.*, we conclude that a different result is not warranted. Accordingly, we affirm defendant's conviction as modified and remand with directions.

## I. BACKGROUND

In February 2005, the State charged defendant with multiple counts of criminal sexual assault and abuse perpetrated against his stepdaughter, K.J.K. (born January 8, 1991), and his stepson, M.J.B. (born May 5, 1994). Specifically, the State charged defendant with (1) predatory criminal sexual assault of a child in that between March 2000 and March 2003, he (a) placed his penis in the mouth of K.J.K. (counts I and II); (b) allowed his penis to have contact with K.J.K.'s vaginal area (count III); (c) placed his penis in K.J.K.'s vagina (counts IV, V, and VI); (d) placed his penis in the mouth of M.J.B. (counts IX, X, and XI) and (2) aggravated criminal sexual abuse in that in November 2002, he knowingly touched M.J.B.'s penis with his fingers for the purpose of sexual arousal (counts VII and VIII). (The State dismissed count VIII prior to defendant's trial.)

### A. The State's Motion To Admit Testimony
### Pursuant to Section 115—10

In August 2005, the State moved to admit hearsay evidence of statements K.J.K. and M.J.B. made under section 115—10 of the Code (725 ILCS 5/115—10 (West 2004)). At an October 2005 hearing on the State's motion, a forensic interviewer testified that she interviewed then 11-year-old K.J.K., which she conducted by handwriting (1) the questions she asked K.J.K. and (2) K.J.K.'s corresponding answers. Immediately after the interview, K.J.K. and her mother, Susan Kitch (who was not present during the interview), reviewed and signed the handwritten transcript. The forensic interviewer stated that K.J.K. did not hesitate in answering her questions and opined that her word-for-word transcription of her interview with K.J.K. was 99% accurate.

The Schuyler County sheriff testified that in March 2003, he interviewed then eight-year-old M.J.B., which he conducted by handwriting (1) the questions he asked M.J.B. and (2) M.J.B.'s corresponding answers. During the interview, M.J.B. told the sheriff that defendant (1) rubbed M.J.B.'s penis in a back and forth motion, (2) made him touch defendant's penis, and (3) made him put defendant's

penis in his mouth on at least three different occasions. Immediately after the interview, M.J.B. and Susan (who was present during the interview) reviewed and signed the handwritten transcript.

The sheriff also testified about an April 2003 statement K.J.K. provided regarding the circumstances surrounding how defendant's ejaculate was on her comforter, which he transcribed verbatim. K.J.K. explained that in December 2002, defendant was on top of her and attempted several times to force his penis inside her vagina, but it would not "fit." Defendant then stopped trying, and as he stood up, he ejaculated onto her comforter.

After the State represented to the trial court that K.J.K. and M.J.B. would be testifying at trial, the court reviewed all three statements and found that (1) the statutory requirements for the admission of (a) K.J.K.'s March and April 2003 hearsay statements and (b) M.J.B.'s March 2003 hearsay statements under section 115—10 of the Code had been met and (2) the forensic interviewer and the sheriff would be permitted to testify to those statements at trial.

### B. The Testimony Presented at Trial

The evidence presented at defendant's October 2005 jury trial, which consisted, in part, of testimony from (1) a gynecologist, (2) Susan, (3) the forensic interviewer, (4) the sheriff, (5) State forensic scientists, (6) M.J.B., and (7) K.J.K. showed the following.

In July 2003, a gynecologist performed a physical examination of K.J.K. and concluded that based on defects found on the hymenal ring of K.J.K.'s vaginal area, it was "very likely" that K.J.K. had been sexually abused. The gynecologist explained that a normal hymenal ring's tissue is "tight" all the way around the ring, smooth, and with no defects. However, K.J.K.'s hymenal ring exhibited tension only in the lower portion, which she opined could have been caused by some external object penetrating through K.J.K.'s vaginal area. However, the gynecologist acknowledged that she could not specifically identify the object that caused the damage to K.J.K.'s hymenal ring.

Susan testified that in 1999 she began dating defendant. As their relationship progressed, Susan introduced defendant to K.J.K. and M.J.B. and observed that, initially, defendant had a normal adult-child relationship with them. In December 1999, Susan, K.J.K., and M.J.B. moved into defendant's mobile home. About two months later, Susan married defendant. Thereafter, Susan noticed that defendant favored K.J.K. and was not as friendly as he had been with M.J.B. In addition, Susan stated that she saw defendant (1) grab K.J.K.'s butt and breasts, (2) tattoo K.J.K.'s buttock when she was 11 years old, and (3) rub lotion on K.J.K.'s breasts when she was 12 years old. On one occasion,

Susan saw that defendant had been in the shower with K.J.K. After Susan confronted defendant, he explained that he had been helping K.J.K. wash her hair.

In March 2003, Susan left the home she shared with defendant because she had "just had enough" of defendant's demanding demeanor. As Susan drove away, she told K.J.K. and M.J.B. that they were not returning. K.J.K. and M.J.B. then told Susan that defendant had been sexually abusing them. Susan (1) reported the allegations K.J.K. and M.J.B. had made to the sheriff and (2) provided the sheriff the comforter that K.J.K. had on her bed when they lived with defendant. At the State's request and without objection, the trial court admitted into evidence the comforter that Susan identified as the one she had provided to the sheriff. Susan added that she did not engage in any sexual activity with defendant on K.J.K.'s comforter.

The forensic interviewer testified about the statements K.J.K. made during the March 2003 interview, as follows. In March 2000, K.J.K. was home alone with defendant when he came into her room. K.J.K. tried to leave, but defendant blocked the doorway and forced his penis into her mouth. Later that morning, defendant returned to K.J.K.'s room and again forced his penis into her mouth. When he was finished, defendant told K.J.K. that if she told anyone, he would kill her. After that day, defendant forced K.J.K. to put his penis into her mouth whenever Susan was out of the house, asleep, or in the shower.

In the summer of 2001, K.J.K. was home alone with defendant. Although K.J.K. had blocked the entrance to her bedroom door, defendant forced his way into her room and held her down. Defendant then put his penis between K.J.K.'s legs, rubbing his penis on her vaginal area. Defendant performed this act almost every time she was home alone with him until June 2002, when defendant began inserting his penis inside her vagina. After June 2002, defendant had sexual intercourse with K.J.K. about once a week. At the start of 2002, defendant began getting into the shower with K.J.K. On one occasion, defendant rubbed cocoa butter on her breasts despite K.J.K.'s insistence that she could apply the lotion herself.

K.J.K. testified consistent with her March 2003 interview statements regarding defendant's conduct forcing his penis (1) into her mouth, (2) between her legs, and (3) into her vagina. K.J.K. also explained that a couple of months after defendant began rubbing his penis on her vaginal area, he also put his fingers in her vagina, telling her that he was doing it so that his penis would eventually "fit." On one occasion defendant's ejaculate dripped onto K.J.K.'s comforter, and defendant told her to wipe it up with some paper towels. K.J.K. identified the comforter that the trial court had previously admitted

into evidence as the comforter she used when she lived with defendant. K.J.K. also testified regarding defendant (1) rubbing cocoa butter on her breasts, (2) showering with her, and (3) tattooing her on her right buttock.

The sheriff testified about the three incidents that M.J.B. described during the March 2003 interview, as follows. In November 2002, defendant came into M.J.B.'s room, grabbed his penis, and began rubbing it for about 30 seconds. In January 2003, defendant took M.J.B. into the bathroom, put M.J.B.'s hand on defendant's penis, and made M.J.B. move his hand up and down for about one minute until he ejaculated. Later that same month, defendant took M.J.B. into the bathroom, made M.J.B. put defendant's penis into his mouth, and told him to suck on his penis. M.J.B. told the sheriff that defendant made him perform this same oral act an additional three or four times. The sheriff also testified consistent with the testimony he had previously provided at the October 2005 hearing on the State's motion to admit hearsay evidence, concerning K.J.K.'s hearsay statements about how defendant's ejaculate was on her comforter.

M.J.B. testified consistent with his March 2003 interview statements regarding the three incidences he described in which defendant (1) rubbed his penis and (2) forced him to (a) rub defendant's penis and (b) place defendant's penis in his mouth.

Forensic scientists at the Illinois State Police Forensic Science Laboratory testified that the deoxyribonucleic acid (DNA) profile identified in a semen stain on K.J.K.'s comforter matched defendant's DNA profile.

Following the presentation of evidence and argument, the jury convicted defendant on all 10 counts. The trial court later sentenced him to (1) 9 consecutive natural-life prison terms for predatory criminal sexual assault of a child and (2) a concurrent 14-year extended-term sentence for aggravated criminal sexual abuse.

This appeal followed.

## II. ANALYSIS

### A. Defendant's Claim That Section 115—10 of the Code Violates the Confrontation Clause

Defendant argues that the United States Supreme Court's decision in *Crawford* renders section 115—10 of the Code (725 ILCS 5/115—10 (West 2004)) unconstitutional in that it violates the confrontation clause of both the United States and Illinois Constitutions (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8). Specifically, defendant contends that (1) section 115—10 is facially unconstitutional in light of the *Crawford* Court's interpretation of the confrontation

clause and (2) his convictions on counts IV and V should be reversed because K.J.K.'s testimony "was quite vague on the times, order[,] and actions for [c]ounts IV and V" and direct testimony to that effect was presented at trial only through K.J.K.'s hearsay statements testified to by the forensic interviewer and sheriff. We address defendant's contentions in turn.

### 1. *The Constitutionality of Section 115—10*

■ Defendant first contends that section 115—10 of the Code (725 ILCS 5/115—10 (West 2004)) is facially unconstitutional in light of the *Crawford* Court's interpretation of the confrontation clause. We disagree.

In considering a challenge to the constitutionality of a statute, we begin with the presumption that all statutes are constitutional. *People v. Waid*, 221 Ill. 2d 464, 480, 851 N.E.2d 1210, 1219 (2006). "[T]he burden of rebutting that presumption is on the party challenging the validity of the statute to demonstrate clearly a constitutional violation." *People v. Greco*, 204 Ill. 2d 400, 406, 790 N.E.2d 846, 851 (2003). "If reasonably possible, a statute must be construed so as to affirm its constitutionality and validity." *Greco*, 204 Ill. 2d at 406, 790 N.E.2d at 851. "A statute is facially unconstitutional (in contrast to unconstitutional as applied to [a] defendant) only if one can think of no circumstance in which the statute would be constitutional." *People v. Reed*, 361 Ill. App. 3d 995, 1000, 838 N.E.2d 328, 333 (2005). The constitutionality of a statute is a question of law, which we review *de novo*. *People v. McCarty*, 223 Ill. 2d 109, 135, 858 N.E.2d 15, 32 (2006).

In support of his contention, defendant relies on *In re E.H.*, 355 Ill. App. 3d 564, 823 N.E.2d 1029 (2005), and Justice Cook's special concurrence in *People v. Miles*, 351 Ill. App. 3d 857, 868-70, 815 N.E.2d 37, 46-48 (2004) (Cook, J., specially concurring).

In *In re E.H.*, 355 Ill. App. 3d at 577, 823 N.E.2d at 1039, the First District held, in pertinent part, that based on the Supreme Court's decision in *Crawford*, section 115—10 of the Code was unconstitutional in that it violated the confrontation clause. In *Miles*, this court reversed the defendant's conviction, concluding that the trial court erred by finding that a child victim's hearsay statements to her mother and a detective were sufficiently reliable to be admissible under section 115—10 of the Code. *Miles*, 351 Ill. App. 3d at 867, 815 N.E.2d at 46. In his specially concurring opinion, Justice Cook agreed that the court had erred but disagreed that section 115—10 had "any continuing validity" because "*Crawford* was certainly critical of 'sufficient safeguards of reliability' hearings" under section 115—10 of the Code. *Miles*, 351 Ill. App. 3d at 868, 815 N.E.2d at 46 (Cook, J., specially

concurring), quoting *Crawford*, 541 U.S. at 63, 158 L. Ed. 2d at 200, 124 S. Ct. at 1371.

However, in *Reed*, 361 Ill. App. 3d at 1000-03, 838 N.E.2d at 332-35, this court explicitly rejected the same argument that defendant now makes—namely, that section 115—10 of the Code is facially unconstitutional in that it violates the confrontation clause. In so doing, we declined to follow the First District's decision in *In re E.H. Reed*, 361 Ill. App. 3d at 1002, 838 N.E.2d at 334. We further note that the First District Appellate Court's holding in *In re E.H.* has since been ordered vacated by the Supreme Court of Illinois. *In re E.H.*, 224 Ill. 2d 172, 863 N.E.2d 231 (2006). Thus, we adhere to our holding in *Reed* and reject defendant's contention that section 115—10 is facially unconstitutional in that it violates the confrontation clause of the United States and Illinois Constitutions (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8).

### 2. *The Admissibility of K.J.K.'s Hearsay Statements Pursuant to Section 115—10*

■ Defendant also contends that his convictions on counts IV and V should be reversed because K.J.K.'s testimony "was quite vague on the times, order[,] and actions for [c]ounts IV and V" and direct testimony to that effect was presented at trial only through K.J.K.'s hearsay statements testified to by the forensic interviewer and sheriff. Essentially, defendant asserts that the trial court's admission of K.J.K.'s hearsay statements under section 115—10 of the Code violated the confrontation clause of the United States and Illinois Constitutions (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8). We disagree.

In *Miles*, 351 Ill. App. 3d 857, 815 N.E.2d 37, this court addressed a similar argument to that which defendant raises here. We first noted that the United States Supreme Court's decision in *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9, rendered the phrases "indicia of reliability" and "particularized guarantees of trustworthiness" irrelevant to confrontation-clause analysis. *Miles*, 351 Ill. App. 3d at 864, 815 N.E.2d at 43. We further noted that the *Crawford* Court held that when " 'the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements.' " *Miles*, 351 Ill. App. 3d at 864, 815 N.E.2d at 44, quoting *Crawford*, 541 U.S. at 59 n.9, 158 L. Ed. 2d at 197 n.9, 124 S. Ct. at 1369 n.9.

In *People v. Bryant*, 391 Ill. App. 3d 1072, 1080-83, 909 N.E.2d 391, 399-401 (2009), this court further considered what the *Crawford* Court meant when it wrote about the hearsay declarant appearing for cross-examination at trial. In answering that question, we quoted

from the recent Supreme Court of Illinois decision in *People v. Sutton*, 233 Ill. 2d 89, 110, 908 N.E.2d 50, 70 (2009), as follows:

" 'The [United States Supreme] Court explained that the confrontation clause gives an accused the right to be confronted with the witnesses against him, which has been read as securing an adequate opportunity to cross-examine adverse witnesses. [Citation.] ***

The Court additionally held that its analysis was not altered by the fact that the testimony at issue involved an out-of-court statement that would traditionally be characterized as hearsay, and declined to require the testimony be examined for indicia of reliability, concluding that such an inquiry was not required when the hearsay declarant is present at trial and subject to unrestricted cross-examination. [Citation.] In that case, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." [Citation.]' [Citation.]" *Bryant*, 391 Ill. App. 3d at 1092, 909 N.E.2d at 408.

In this case, K.J.K., who was then 11 years old, testified at defendant's October 2005 trial consistent with her hearsay statements regarding defendant's conduct forcing his penis (1) into her mouth, (2) between her legs, and (3) into her vagina.

The record shows that on cross-examination, K.J.K. answered all of the questions put to her by defense counsel. However, defense counsel only asked three questions that were tangentially related to the sexual charges alleged by the State. Specifically, defense counsel asked (1) whether K.J.K. ever used her comforter to watch television in the living room, (2) whether K.J.K. possessed her comforter on the day she left the home she shared with her mother and defendant, and (3) how many times defendant supposedly showered with her (to which K.J.K. responded numerous times).

Thus, despite defendant's contention that K.J.K.'s testimony "was quite vague on the times, order[,] and actions for [c]ounts IV and V," this record demonstrates that K.J.K. "appeared" for cross-examination at trial within the meaning of *Crawford* and the confrontation clause. The key inquiry is whether she was present for cross-examination and answered questions asked of her by defense counsel. Because she was present for cross-examination and answered defense counsel's questions, the confrontation clause places absolutely no constraints on the use of K.J.K.'s prior statements. (Because K.J.K. answered defense counsel's questions on cross-examination, we need not decide what the legal consequences would be, if any, had she instead answered some, but not all, of those questions.)

In other words, the question of the admissibility of those prior statements must be measured *only* by whether they meet the require-

ments of section 115—10 of the Code (725 ILCS 5/115—10 (West 2004)). For purposes of the confrontation clause, because K.J.K. "appeared" for cross-examination at trial within the meaning of *Crawford*, any of her prior statements offered at trial is a nonevent. Thus, we reject defendant's assertion that the trial court's admission of K.J.K.'s hearsay statements under section 115—10 of the Code violated the confrontation clause of the United States and Illinois Constitutions (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8).

## B. The Sentences Imposed by the Trial Court

### 1. *The Trial Court's Imposition of Consecutive Natural-Life Prison Terms*

■ Defendant next contends that the trial court erred by imposing consecutive natural-life prison terms for predatory criminal sexual assault of a child. We agree.

Subsection 5—8—4(a)(ii) of the Unified Code of Corrections (Unified Code) provides "[t]he court shall enter sentences to run consecutively" if "the defendant was convicted of a violation of [s]ection *** 12—14.1 of the Criminal Code of 1961." 730 ILCS 5/5—8—4(a)(ii) (West 2000). Section 12—14.1 of the Criminal Code of 1961 (Criminal Code) defines predatory criminal sexual assault of a child and provides that "[a] person convicted of predatory criminal sexual assault of a child committed against [two] or more persons regardless of whether the offenses occurred as the result of the same act or of several related or unrelated acts shall be sentenced to a term of natural[-]life imprisonment." 720 ILCS 5/12—14.1(a)(1), (b)(1.2) (West 2000).

Although the Unified Code and the Criminal Code appear to authorize the imposition of consecutive life sentences for predatory criminal sexual assault, our supreme court has held that a defendant can only serve multiple life sentences concurrently. *People v. Palmer*, 218 Ill. 2d 148, 169, 843 N.E.2d 292, 304 (2006). The court reasoned:

"It belabors the obvious to state that at the conclusion of a defendant's first natural-life sentence, his life is over. *** Defendant cannot serve two natural-life sentences in sequence, nor will the total amount of two or more natural-life sentences ever be more than defendant's one life. *** Therefore, the sentences may not be consecutive, but must be concurrent because concurrent sentences are sentences which operate simultaneously." *Palmer*, 218 Ill. 2d at 167-68, 843 N.E.2d at 304.

Therefore, we modify the trial court's imposition of nine consecutive natural-life sentences to nine concurrent natural-life sentences. See 134 Ill. 2d R. 615(b)(4) (on appeal the reviewing court may reduce the punishment imposed by the trial court).

## 2. *The Trial Court's Imposition of an Extended Prison Term*

■ Defendant also argues that the trial court erred by imposing an extended prison term for aggravated criminal sexual abuse. Specifically, defendant contends that the court erred when it considered the age of the victim, a factor inherent in the offense, as an aggravating factor to impose an extended-term sentence of 14 years in prison for the aggravated criminal sexual abuse. We decline to address defendant's argument because he has forfeited this issue.

A defendant forfeits the appeal of a sentencing issue when he fails to (1) timely object during the sentencing hearing and (2) has failed to raise the issue in a postsentencing motion. *People v. McNulty*, 383 Ill. App. 3d 553, 556, 892 N.E.2d 73, 76 (2008).

Here, the record shows that defendant failed to (1) object at his November 2005 sentencing hearing to the issue about which he now complains and (2) raise the issue in his posttrial motion. Thus, because this issue was not raised to the trial court, defendant has forfeited the issue on appeal. Further, we note that because we earlier affirmed the imposition of nine concurrent natural-life sentences upon defendant, this is essentially a nonissue.

## III. FURTHER ANALYSIS AFTER REMAND FROM THE SUPREME COURT

As we previously discussed, the primary issue in this case is the admissibility of the statements of K.J.K. and M.J.B. under the confrontation clause in light of the Supreme Court's decision in *Crawford*. Thus, our initial focus was to determine whether K.J.K. and M.J.B. "appeared" for cross-examination at defendant's trial. We earlier held that for purposes of the confrontation clause, because they both "appeared" for cross-examination at trial within the meaning of *Crawford*, their prior statements being offered at trial was a nonevent.

In compliance with the supreme court's directive, we now analyze its recent decision in *Rolandis G.* to determine whether a different result in this case is warranted. We begin our analysis with a discussion of the appellate court decision that the supreme court reviewed (*In re Rolandis G.*, 352 Ill. App. 3d 776, 817 N.E.2d 183 (2004)).

### A. The Appellate Court Decision in *Rolandis G.*

The respondent in *Rolandis G.* was adjudicated delinquent after the trial court found him guilty of aggravated criminal sexual assault (720 ILCS 5/12—14(b) (West Supp. 2001)) of six-year-old Von J. Respondent initially argued to the appellate court that the trial court erred by admitting, pursuant to section 115—10 of the Code (725 ILCS 5/115—10 (West 2002)), Von's statements about the sexual assault to (1) his mother, (2) a police officer, and (3) a child-advocacy

worker. Respondent asserted that under section 115—10, the child victim must either (1) testify at trial (see 725 ILCS 5/115—10(b)(2)(A) (West 2002)) or, if the child is unavailable as a witness, (2) present through counsel corroborative evidence of the act which is the subject of the statement (see 725 ILCS 5/115—10(b)(2)(B) (West 2002)). *Rolandis G.*, 352 Ill. App. 3d at 779-80, 817 N.E.2d at 186-87. The respondent asserted that although Von gave some basic background information from the witness stand, he was not "available to testify" within the meaning of section 115—10 because he did not testify about the alleged sexual assault. Accordingly, the respondent contended that the State was obligated to introduce evidence corroborating the out-of-court statements but failed to do so.

While the respondent's appeal was pending, the United States Supreme Court rendered its decision in *Crawford*. The respondent then filed a supplemental brief, arguing that under *Crawford*, testimonial out-of-court statements by an unavailable declarant may not be admitted in a criminal trial unless the declarant was subject to cross-examination when he gave the statements. The respondent also argued that section 115—10 was unconstitutional to the extent that it allowed such statements to be admitted. *Rolandis G.*, 352 Ill. App. 3d at 779, 817 N.E.2d at 186-87.

The appellate court agreed with the respondent's arguments that Von's statements to the officer and the child-advocacy worker were testimonial and, therefore, improperly admitted under *Crawford*. *Rolandis G.*, 352 Ill. App. 3d at 781, 817 N.E.2d at 188. The court added that "[t]o the extent section 115—10 permits the introduction of such statements, it is unconstitutional." *Rolandis G.*, 352 Ill. App. 3d at 781, 817 N.E.2d at 188.

Although the respondent conceded that Von's statements to his mother were not testimonial hearsay, he nonetheless argued that they should have been excluded under section 115—10 because Von was unavailable within the meaning of that statute and the State did not present corroborating evidence. The appellate court agreed but also concluded that Von's out-of-court statements to his mother were still admissible if the State introduced corroborating evidence. The court ultimately agreed with the State that it had done so. *Rolandis G.*, 352 Ill. App. 3d at 784, 817 N.E.2d at 190. Accordingly, the court concluded that Von's "statements to his mother were properly admitted under section 115—10 and do not raise any confrontation clause issues." *Rolandis G.*, 352 Ill. App. 3d at 784, 817 N.E.2d at 190. The appellate court nonetheless reversed the respondent's adjudication because it concluded that Von's statements to the officer and the child-advocacy worker were improperly admitted into evidence. *Rolandis G.*, 352 Ill. App. 3d at 784, 817 N.E.2d at 190-91.

## B. The Supreme Court Decision in *Rolandis G.*

The supreme court granted the State's petition for leave to appeal in *Rolandis G.*, in which the State maintained its primary concerns were for the supreme court to (1) affirm the constitutionality of section 115—10 and (2) consider the proper application of *Crawford* in situations involving young victims of sexual crimes. *Rolandis G.*, 232 Ill. 2d at 22, 902 N.E.2d at 606. The State agreed with the appellate court that (1) Von's statement to his mother was nontestimonial and (2) his statement to the officer was testimonial. However, the State challenged the appellate court's determination that Von's statement to the child-advocacy worker was testimonial. *Rolandis G.*, 232 Ill. 2d at 29, 902 N.E.2d at 609.

The supreme court disagreed with the State regarding Von's statement to the child-advocacy worker and concluded that this statement was testimonial. *Rolandis G.*, 232 Ill. 2d at 36, 902 N.E.2d at 613. The supreme court also rejected the State's argument that the respondent forfeited the right to challenge the admission of Von's testimonial hearsay statements on the ground of forfeiture by wrongdoing. *Rolandis G.*, 232 Ill. 2d at 42, 902 N.E.2d at 616-17.

The last matter the supreme court addressed in *Rolandis G.* was the State's claim that the *Crawford* violation was subject to harmless-error review. The supreme court agreed with the State that harmless-error analysis applied to a *Crawford* violation and concluded that the error was harmless beyond a reasonable doubt because "the properly admitted evidence overwhelmingly supports [the respondent's] conviction." *Rolandis G.*, 232 Ill. 2d at 43, 902 N.E.2d at 617.

The supreme court did not address the constitutionality of section 115—10 of the Code. Instead, the court noted that the State withdrew that portion of its brief because the appellate court held only that it was unconstitutional "as applied." *Rolandis G.*, 232 Ill. 2d at 47, 902 N.E.2d at 619.

## C. The Application of the Supreme Court's Decision in *Rolandis G.* to This Case

■ Consistent with the supreme court's directive that we reconsider our decision in this case in light of its opinion in *Rolandis G.*, we have discussed the earlier decision of the appellate court in that case to demonstrate that we understood the context in which the supreme court rendered its opinion. After reconsidering our decision in this case, we conclude that *Rolandis G.* does not warrant a different result.

As earlier stated, the primary focus of our decision in this case was whether K.J.K. and M.J.B. "appeared" for cross-examination at defendant's trial within the meaning of *Crawford*. *Rolandis G.* ad-

dressed several important aspects of the Supreme Court's decision in *Crawford*, including testimonial hearsay and forfeiture-by-wrongdoing. (For a comprehensive and well-reasoned analysis of what constitutes testimonial hearsay, including a recent and thoughtful discussion of *Rolandis G.*, see D. Shanes, *Confronting Testimonial Hearsay: Understanding the New Confrontation Clause*, 40 Loy. U. Chi. L.J. 879 (2009).) However, because "the State conceded that Von was not available to testify at trial" (*Rolandis G.*, 232 Ill. 2d at 22, 902 N.E.2d at 605), the supreme court did not need to address the issue in this case—namely, when a declarant appears for cross-examination.

## IV. CONCLUSION

For the reasons stated, we affirm defendant's convictions and sentences as modified and remand with directions that the trial court amend its sentencing order to reflect concurrent natural-life sentences for defendant's nine predatory-criminal-sexual-assault-of-a-child convictions. Because the State has in part successfully defended a portion of the criminal judgment, we grant the State its statutory assessment of $50 against defendant as costs of this appeal.

Affirmed as modified; cause remanded with directions.

MYERSCOUGH and TURNER, JJ., concur.