Filed 6/28/10          NO. 4-08-0983

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,  )   Appeal from
           Plaintiff-Appellee,        )   Circuit Court of
           v.                         )   Woodford County
ANTHONY LARA,                         )   No. 08CF55
           Defendant-Appellant.       )
                                      )   Honorable
                                      )   John B. Huschen,
                                      )   Judge Presiding.
_____

          JUSTICE POPE delivered the opinion of the court:

          In September 2008, a jury found defendant guilty of

predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(1) (West

2006)).  Defendant appeals, arguing (1) section 115-10 of the

Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10

(West 2008)) is unconstitutional; (2) the trial court abused its

discretion by allowing the State to introduce R.K.'s videotaped

statement pursuant to section 115-10 of the Code (725 ILCS 5/115-

10 (West 2008)); (3) the State failed to establish defendant's

guilt beyond a reasonable doubt; and (4) defendant's trial

counsel was ineffective for failing to argue R.K.'s testimony at

trial made her unavailable as a witness and denied defendant his

right to confront witnesses against him.  We affirm.

                        I. BACKGROUND

          In June 2008, a grand jury indicted defendant, charging

him with predatory criminal sexual assault for committing an act

of sexual penetration on R.K. between July 13, 2007, and May 7, 2008. At the time of the offense, R.K. was 5 years old (born September 16, 2002) and defendant was 25 years old. The indictment alleged defendant placed his mouth on R.K.'s vagina.

In June 2008, the State filed a notice of its intent to use out-of-court statements made by R.K. to Officer Eric Luckey, a Eureka police officer, on May 9, 2008, at the Child Advocacy Center in Eureka, Illinois, pursuant to section 115-10(a) of the Code (725 ILCS 5/115-10(a) (West 2006)).

In July 2008, a hearing was held on R.K.'s out-of-court statement. At the hearing, Officer Luckey testified he had been a police officer for 20 years. He testified he had received special training on how to interview children who are victims of sexual abuse or severe physical abuse. In April 2006, he attended a 40-hour class geared toward preparing individuals to interview children in situations such as this case. Luckey testified he received additional training in April 2007 and May 2007.

Officer Luckey testified these training sessions taught him the key to interviewing children is to ask open-ended, non-leading questions in an environment that is comfortable for the child. Luckey testified he typically does not know the alleged facts of the case before interviewing a child so that he can avoid leading the child. Luckey testified he wants a child he is

interviewing to feel comfortable and not intimidated so the child can tell him what happened.

According to Luckey, he had conducted between 30 and 50 interviews with children alleged to be victims of sexual or physical abuse. Luckey testified individuals observing the interview, who are not in the interview room, are able to communicate with him through a computer monitor mounted on the wall in the interview room.

Luckey testified he interviewed R.K., who was five at the time, at the Child Advocacy Center in Eureka in May 2008. He was the only individual in the room with R.K., but the interview was both audio- and video-recorded. The video of the interview was admitted into evidence at the hearing as People's exhibit No. 1. Luckey testified he did not believe R.K. had been coached prior to the interview.

In August 2008, the trial court granted the State's motion to admit R.K.'s out-of-court statement, provided R.K. testified at trial. The court found the interview contained sufficient safeguards of reliability.

In September 2008, at defendant's jury trial, Kathleen K. testified she is R.K.'s mother. She, R.K., and her son live in a two-story house with a basement. R.K. had her own bedroom on the first floor of the house. Kathleen's bedroom was on the second floor.

Kathleen testified she dated defendant between July 2007 and May 2008. She testified defendant stayed at her house during that period. According to her testimony, defendant began to stay at her house more frequently in January 2008, approximately five nights per week. She testified her children were present in the home when defendant spent nights there.

According to her testimony, her roommate and babysitter, Dustin Plitus, watched R.K. and her brother while Kathleen was at work. She testified most of the time, she did not leave the children alone with defendant. However, she testified he was alone with the children once or twice for approximately two hours when she went to the grocery store. Kathleen testified she left for work at 4 a.m. Dustin and defendant would be sleeping on the second floor when she left. She testified defendant had to leave her house between 5:30 and 6 a.m. to get to work.

Kathleen also testified defendant had an eyebrow ring, two lip rings, a labret piercing, and a tongue ring. She stated defendant usually always wore his jewelry, even while sleeping, unless he was going to church.

Kathleen testified R.K. told her about the allegations against defendant in the car when she and R.K. were alone. Kathleen said she and R.K. had never talked about any type of sexual matters prior to this. Kathleen called the Child Advocacy Center, which referred her to the Department of Children and

Family Services (DCFS) and the police.

Kathleen testified she still loved defendant. She testified R.K. and defendant got along well together and R.K. considered defendant her friend. She said she had never seen defendant do anything inappropriate to R.K.

The State called R.K. as a witness. R.K. testified people are not supposed to touch certain parts of her body. When asked which parts, R.K. pointed down. When asked what she called the part to which she pointed, she said "[b]ottom body." R.K. testified it was on the front of her body and that defendant had touched her on that part of her body. When asked how many times defendant had touched her "bottom body," she said "100."

When asked by the State, "Did he touch you with any-thing else beside his hand," R.K. answered, "No." She said she told defendant to "quit it" when he touched her. R.K. testified defendant would stand and look at her when he was not touching her. R.K. testified she told her mother, while riding in the car with her, what defendant had done to R.K. When asked why she told her mom, R.K. responded, "Because he was doing something wrong."

R.K. said no one else had ever touched her "down there." Besides her mom and the people in the courtroom, she testified she had never told anyone else about what happened. R.K. testified defendant's hands touched her below her clothes.

She also testified his hands were outside her underwear. R.K. stated defendant was not wearing facial jewelry when he touched her "down there." She said defendant did not take off any of his clothes when he touched her "down there," nor did he take off any of her clothes.

R.K. testified she considered defendant her friend. However, when the State asked R.K. if she liked defendant, she said no because he did something wrong.

Defense counsel chose to limit his cross-examination of R.K. Defense counsel did not ask her any questions about the alleged incident or any other incidents of inappropriate contact.

After R.K. testified, the trial court heard arguments outside the presence of the jury regarding R.K.'s videotaped statement. Defense counsel argued R.K. did not testify to the elements charged in this case. According to defense counsel, R.K.'s testimony at trial was completely different from what she told Luckey. As a result, defense counsel questioned the reliability of the videotaped interview. However, as to R.K.'s availability as a witness, the following exchange occurred:

"[TRIAL COURT]: Just so that I understand clearly your argument, Mr. Neiner, you're not arguing that her testimony was so deficient as to make her not available?

[DEFENSE COUNSEL]: Well, she was avail-

- 6 -

able.  Just because she is testifying differ-
ently doesn't mean it's not available."
The court noted it had previously found the time, content, and
circumstances of R.K.'s recorded statement to be reliable.  Based
on testimony the court had heard at the trial, it found R.K.'s
prior statements were still reliable, even if they were
inconsistent with her trial testimony.  The trial then resumed.

Officer Luckey testified he was a police officer with
the City of Eureka and had been a police officer for 20 years.
Luckey testified he had received specialized training in inter-
viewing children alleged to be victims of sexual or physical
abuse.  The videotaped interview and a transcript of the inter-
view were admitted into evidence.  The jurors were each provided
a transcript of the videotaped statement while the videotape was
played for the jury.

During R.K.'s interview with Luckey, Luckey asked her
if there were places on her body other people should not touch.
She said, "They're not supposed to lick my pee pee."  When asked
if anyone had ever licked her "pee pee," R.K. said, "[Defendant]
did."  She said sometimes defendant spent the night at her house.
Luckey then asked her about what happens when defendant licks her
"pee pee."

"[LUCKEY:]  Can you tell me what happens
when he does that?

- 7 -

[R.K.:]  When he hurts it he licks it.

[LUCKEY:]  When he hurts it he licks it?

[R.K.:]  Yeah.  He's pretending he is kissing it but he is licking it."

R.K. said this happens in the room where she sleeps.  Luckey later asked R.K. more questions about defendant licking her.

[LUCKEY:]  When he is licking your pee pee, does it happen in the daytime, night time, or some other time?

[R.K.]  Daytime.

[LUCKEY:]  Daytime.  And what are you usually doing before this happens?  Are you in your, are you in your bedroom or are you somewhere else?

[R.K.]  When I was so tired I went to sleep in the daytime.  When he just pulled down my pants and he licked my pee pee.

[LUCKEY:]  He pulled down your pants and licked your pee pee.  Okay.  Where did he lick you when he was licking you [R.K.]?

[R.K.:]  Inside my pee pee."

R.K. also stated defendant told her not to tell anybody about him licking her "pee pee."  R.K. said defendant licked her "pee pee" more than one time.  When asked how it felt, R.K. said:

- 8 -

"[R.K.:]  Feels like he is stabbing me
with his lip rings.

[LUCKEY:]  It feels like he is stabbing
you with his lip rings.

[R.K.:]  Yeah.

[LUCKEY:]  Does he have rings in his
lips?

[R.K.:]  Yeah. Right here and right here
and right here."
Following Officer Luckey's testimony, the State rested.

Defendant called Marshall Smith, a deputy with the Woodford County sheriff's department.  Deputy Smith testified he was dispatched to Kathleen K.'s home on May 9, 2008, talked to Kathleen, and took a report.  He did not interview R.K. or anyone else living at the residence.  Deputy Smith testified he had no further involvement with the investigation and this was normal procedure once a case had been turned over to the detective division of the department.

Terry Glaub testified he is a detective with the Woodford County sheriff's office and a member of the Child Advocacy Center in Woodford County.  He was assigned to investigate the allegations involving R.K.  Glaub also testified he requested a physical exam of R.K. be performed.  Glaub testified protocols for the Child Advocacy Center call for other family

members to be interviewed, with special importance placed on parents and caretakers. He stated he spoke to R.K.'s father, Tim K. Tim K. had no knowledge about the substance of R.K.'s allegations against defendant. Glaub testified he did not ask Tim K. about his relationship with defendant. Glaub observed Luckey's interview of R.K. Glaub testified there was no indication R.K. had been coached. In fact, Glaub stated R.K. said no one told her what to say.

The jury found defendant guilty of predatory criminal sexual assault. In October 2008, the trial court sentenced defendant to 12 years' imprisonment. In December 2008, the trial court denied defendant's posttrial motion, which alleged the trial court erred in admitting R.K.'s videotaped statement.

This appeal followed.

## II. ANALYSIS

### A. Constitutionality of Section 115-10 of the Code

Defendant argues section 115-10 of the Code (725 ILCS 5/115-10 (West 2006)) is unconstitutional because it "fails to incorporate a blanket prohibition of testimonial statements where the defense has no opportunity to cross-examine the declarant," and it "improperly incorporates an evidentiary standard which has been specifically rejected by the United States Supreme Court" in <u>Crawford v. Washington</u>, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). These are facial challenges to the constitu-

tionality of section 115-10 of the Code (725 ILCS 5/115-10 (West 2006)).

When determining the constitutionality of a statute, courts presume the statute is constitutional. <u>People v. Reed</u>, 361 Ill. App. 3d 995, 1000, 838 N.E.2d 328, 333 (2005). A court must interpret a statute so as to uphold its constitutionality if reasonably possible. <u>Reed</u>, 361 Ill. App. 3d at 1000, 838 N.E.2d at 333. "'A statute is facially unconstitutional (in contrast to unconstitutional as applied to [a] defendant) only if one can think of no circumstance in which the statute would be constitutional.'" <u>People v. Kitch</u>, 392 Ill. App. 3d 108, 114, 915 N.E.2d 29, 34 (2009), <u>appeal</u> <u>allowed</u>, 233 Ill. 2d 581, 919 N.E.2d 360 (2009), quoting <u>Reed</u>, 361 Ill. App. 3d at 1000, 838 N.E.2d at 333.

In <u>Kitch</u>, this court recently adhered to its previous ruling in <u>Reed</u> and rejected the defendant's contention section 115-10 is facially unconstitutional. <u>Kitch</u>, 392 Ill. App. 3d at 115, 915 N.E.2d at 35. We continue to adhere to this court's prior precedent and find section 115-10 of the Code (725 ILCS 5/115-10 (West 2006)) facially constitutional.

Defendant points out this court recently interpreted section 115-10 of the Code (725 ILCS 5/115-10 (West 2006)) to allow for the introduction of prior out-of-court statements when a witness takes the stand and answers no meaningful question on

cross-examination. See <u>People v. Sharp</u>, 391 Ill. App. 3d 947, 909 N.E.2d 971 (2009); <u>People v. Bryant</u>, 391 Ill. App. 3d 1072, 909 N.E.2d 391 (2009). Defendant argues this could not have been the legislature's intent when it provided a witness must testify at the proceedings for the prior statement to be admissible.

We need not address this hypothetical argument because it is not applicable to the facts of this case. The victim in this case, R.K., took the stand and offered meaningful testimony. Further, defendant had the opportunity to cross-examine her. R.K. answered all of defense counsel's questions. Defendant cannot challenge the statute on a basis that it could conceivably be applied unconstitutionally to another defendant. See <u>People v. Wisslead</u>, 108 Ill. 2d 389, 397, 484 N.E.2d 1081, 1084 (1985).

In addition, as the State points out in its brief, the confrontation clause only guarantees an opportunity for effective cross-examination; it does not guarantee effective cross-examination. <u>Bryant</u>, 391 Ill. App. 3d at 1081, 909 N.E.2d at 400. Defendant had the opportunity to cross-examine the victim in this case, and she answered all of his questions. It appears, as a matter of trial strategy, defense counsel chose not to cross-examine R.K. about the charge alleged in the indictment, nor did he question her about her statement to Officer Luckey. That defense counsel chose not to cross-examine R.K. on these issues does not translate to a lack of opportunity to do so.

B. Admission of Videotaped Statement

Defendant also argues the trial court abused its discretion by allowing R.K.'s videotaped statement to be shown to the jury.  Because the State is the proponent of the out-of-court statement sought to be admitted pursuant to section 115-10 of the Code (725 ILCS 5/115-10 (West 2006)), the State bore the burden of establishing the statement was "reliable and not the result of adult prompting or manipulation."  Sharp, 391 Ill. App. 3d at 955, 909 N.E.2d at 978.

We will overturn a trial court's decision to allow the admission of evidence only when the record clearly demonstrates the decision was an abuse of discretion.  People v. Cookson, 215 Ill. 2d 194, 204, 830 N.E.2d 484, 490 (2005).  "'An abuse of discretion occurs when the [court's] ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view.'"  Sharp, 391 Ill. App. 3d at 955, 909 N.E.2d at 978, quoting People v. Robertson, 312 Ill. App. 3d 467, 469, 727 N.E.2d 404, 406 (2000).  We find the trial court did not abuse its discretion in admitting this evidence.

When conducting a section 115-10 hearing, the court examines the totality of the circumstances surrounding the hearsay statements, including the following:  "'(1) the child's spontaneity and consistent repetition of the incident, (2) the child's mental state, (3) use of terminology unexpected of a

child of similar age, and (4) the lack of motive to fabricate.'" Sharp, 391 Ill. App. 3d at 955, 909 N.E.2d at 978, quoting People v. Cookson, 335 Ill. App. 3d 786, 791, 780 N.E.2d 807, 811 (2002), aff'd, 215 Ill. 2d 194, 830 N.E.2d 484 (2005). Defendant suggests R.K.'s inability to pinpoint when the sex act occurred and certain inconsistencies rendered her statement unreliable.

After viewing the videotape, we do not find the trial court abused its discretion in finding "the time, content, and circumstances of the statement provide sufficient safeguards of reliability" (725 ILCS 5/115-10(b)(1) (West 2006)). Officer Luckey did not direct R.K.'s answers in the interview. He asked open-ended questions, which R.K. answered. R.K. described conduct with which a typical four- or five-year-old child would not and should not be familiar. Not only did R.K. describe what defendant did, she also described how it felt. R.K. told Luckey defendant's facial jewelry hurt her "pee-pee" when he was performing oral sex on her. As she described it, it felt like he was stabbing her with his lip rings. In addition, the record contains no possible motive for R.K. to fabricate these allegations. R.K.'s mother testified she still loved defendant and defendant and R.K. got along well together. Further, Luckey testified he did not believe R.K. had been coached. As a result, we will not say the trial court's pretrial ruling was fanciful, arbitrary, or unreasonable.

- 14 -

Defendant also argues the trial court should have reversed its pretrial ruling after R.K. testified at the trial because the contradictions between her testimony and her recorded interview rendered the interview unreliable. Defendant points to the fact R.K. never stated at trial defendant had penetrated her with his tongue. When asked by the State if defendant had "touched" her with any part of his body beside his hand, R.K. answered, "No." However, a five-year-old child most likely would not equate oral sex with touching. Touching for a five-year-old is done with fingers and hands. Neither the State nor defendant specifically asked R.K. whether defendant put his mouth or tongue on her vagina.

In this case, R.K.'s testimony at trial was not so much inconsistent with the videotaped statement as it was less complete than the previous statement. This is understandable in light of her tender years and the passage of time. Determinations of the credibility of witnesses, the weight to be given their testimony, and reasonable inferences to be drawn from the evidence lie in the province of the trier of fact, here--the jury. People v. Curtis, 296 Ill. App. 3d 991, 999, 696 N.E.2d 372, 378 (1998).

The jury could have found R.K.'s videotaped statement more complete and trustworthy than her trial testimony, given its proximity in time to the incident. The jury was able to assess

R.K.'s credibility because it was able to observe her demeanor in the video and on the witness stand and could consider any conflicts or inconsistencies in her testimony. Nothing about her trial testimony rendered her prior statement unreliable. Thus, the trial court did not err in denying defendant's motion to reconsider its earlier ruling to admit the recorded interview. Any inconsistencies between R.K.'s trial testimony and her recorded interview affect only the weight and not the admissibility of the recorded interview. Defendant was free to, and did, argue these inconsistencies to the jury.

### C. Sufficiency of the Evidence

We next address defendant's argument the State failed to establish his guilt beyond a reasonable doubt. When reviewing a challenge to the sufficiency of the State's evidence, we view the evidence presented in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the State proved the elements of the offense beyond a reasonable doubt. People v. Schmalz, 194 Ill. 2d 75, 80, 740 N.E.2d 775, 778 (2000).

The grand jury indicted defendant on the charge of predatory criminal sexual assault of a child. 720 ILCS 5/12-14.1(a)(1) (West 2006). Section 12-14.1(a)(1) of the Code states a defendant "commits predatory criminal sexual assault of a child if *** the accused was 17 years of age or over and commits an act

of sexual penetration with a victim who was under 13 years of age when the act was committed." 720 ILCS 5/12-14.1(a)(1) (West 2006). Section 12-12(f) of the Code defines "sexual penetration" as "any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration." 720 ILCS 5/12-12(f) (West 2006). The indictment alleged defendant placed his mouth on R.K.'s vagina.

Defendant is correct that R.K.'s trial testimony alone was not sufficient to establish defendant placed his mouth on her vagina. However, the State also introduced R.K.'s recorded interview and the recorded interview was admitted as substantive evidence. In the recorded interview, R.K. stated defendant placed his mouth on her sex organ and licked inside her "pee pee." A reasonable jury could properly have found R.K.'s statement credible.

Defendant argues R.K.'s recorded statement contains inconsistencies, contradictions, and most of the detail in the interview came after prodding by Officer Luckey. We disagree with defendant's characterization of Officer Luckey's interview technique. As we stated earlier, Luckey asked open-ended ques-

tions, to which R.K. responded.  As for the alleged inconsistencies and contradictions, the jury obviously found her statements regarding the alleged conduct credible.  It is not the function of this court to second-guess the credibility determinations of the trier of fact unless we determine no reasonable jury could have come to that same conclusion.  As our supreme court has stated, "it is for the fact finder to judge how flaws in part of the testimony affect the credibility of the whole" as long as its judgment is reasonable in light of the record.  People v. Cunningham, 212 Ill. 2d 274, 283, 818 N.E.2d 304, 310 (2004).  In this case, we find the jury's decision to believe R.K.'s statement regarding defendant licking her "pee pee" was reasonable.

Defendant's argument on this issue succeeds only if the trial court erred in admitting the videotaped statement.  We have found no error in admitting the statement.  Thus, the video and trial testimony both constitute substantive evidence and support defendant's conviction.

### D. Ineffectiveness of Trial Counsel

Defendant argues his trial counsel was ineffective because he did not argue R.K. was unavailable as a witness and her videotaped statement was therefore inadmissible.  To establish ineffective assistance of counsel, defendant must establish (1) his counsel's performance was so deficient the attorney was not functioning as counsel guaranteed by the sixth amendment to

the United States Constitution, and (2) he was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). "An attorney's performance must be evaluated from counsel's perspective at the time the contested action was taken and will be considered constitutionally deficient only if it is objectively unreasonable under prevailing professional norms." People v. Bailey, 232 Ill. 2d 285, 289, 903 N.E.2d 409, 412 (2009).

Although R.K. took the stand in this case and answered all of defense counsel's questions on cross-examination, defendant argues R.K.'s trial testimony created a dilemma for his trial counsel. According to defendant, R.K. testified defendant did not engage in the activity described in her recorded interview. By denying the allegations at issue in the indictment, defendant argues R.K. created a situation where defendant could not effectively cross-examine her. Defendant contends his counsel would have had to ask her to admit she made the statement to Officer Luckey, thereby implicating defendant. As a result, defendant argues R.K. was unavailable as a witness. (As we noted above, R.K. did not deny the allegations in the indictment. No one at trial asked her directly if defendant licked her "pee pee.")

Defendant's argument his trial counsel should have argued R.K. was unavailable fails here because it is clear R.K.

- 19 -

was available.  This court has previously stated a defendant's confrontation rights are not violated simply because he was unable to cross-examine a witness to the extent he wished.  See Bryant, 391 Ill. App. 3d at 1094, 909 N.E.2d at 409-10.

In In re Rolandis G., 232 Ill. 2d 13, 32-33, 902 N.E.2d 600, 611 (2008), our supreme court ruled a videotaped statement made by a child to a child advocate was testimonial in nature. Because the court found the child did not testify at trial and defendant had no prior opportunity for cross-examination, our supreme court held admission of the videotaped statement violated defendant's right to confront his accuser.  Rolandis G., 232 Ill. 2d at 33, 902 N.E.2d at 611.  However, our supreme court has also stated, "[t]he confrontation clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination."  People v. Flores, 128 Ill. 2d 66, 88, 538 N.E.2d 481, 489 (1989).  R.K. was available as a witness and answered all of defendant's questions on cross-examination.

Defendant's argument is similar to an argument made by the defendant in People v. Garcia-Cordova, 392 Ill. App. 3d 468, 912 N.E.2d 280 (2009).  In Garcia-Cordova, the question was whether the child was available for cross-examination during defendant's trial.  Garcia-Cordova, 392 Ill. App. 3d at 480, 912 N.E.2d at 291.  Even though the child was physically present and

answered some preliminary questions, the defendant argued the child was unavailable because she denied remembering, among other things, defendant doing anything to her on the couch or bed, why she spoke with an investigator from DCFS, and whether other people should not touch certain parts of her body. Garcia-Cordova, 392 Ill. App. 3d at 480, 912 N.E.2d at 291. Defendant argued the child was unavailable for cross-examination regarding her statements to the DCFS investigator because defendant "would have been forced to first elicit the damaging testimony from [the child] and then attempt to refute it." Garcia-Cordova, 392 Ill. App. 3d at 480, 912 N.E.2d at 291.

The Second District found the child was available for cross-examination. The child appeared at trial, testified under oath, made an in-court identification of the defendant, and recalled speaking with the DCFS investigator. Garcia-Cordova, 392 Ill. App. 3d at 483, 912 N.E.2d at 294. The child testified she made several drawings during her meetings with the DCFS investigator, some of which she identified during her testimony. She also testified who was depicted in the drawings she was able to identify. Garcia-Cordova, 392 Ill. App. 3d at 483-84, 912 N.E.2d at 294.

> "Although [the child] testified that she was
> unable to recall what she spoke with [the
> DCFS investigator] about, what the activities

- 21 -

depicted in the drawings were, and whether anything had happened to her on the couch or in the bed, and although she did not know the context of some of the drawings or why she drew them, she did answer all of the questions put to her on those subjects. She did not refuse, like the child witness in Rolandis G. did, to answer the questions; rather, she simply testified she could not remember or did not know." Garcia-Cordova, 392 Ill. App. 3d at 484, 912 N.E.2d at 294.

The court noted defendant could have cross-examined the child on her descriptions of the drawings she made, her inability to remember her conversation with the DCFS investigator or the alleged incidents of abuse, and her claimed lack of knowledge regarding some of the pictures. Garcia-Cordova, 392 Ill. App. 3d at 484, 912 N.E.2d at 294. The court stated cross-examination on these topics could be considered "'friendly' cross-examination." Garcia-Cordova, 392 Ill. App. 3d at 484, 912 N.E.2d at 294. The court also stated defendant could have emphasized the issue of the child's credibility to the jury. Garcia-Cordova, 392 Ill. App. 3d at 484, 912 N.E.2d at 294.

In the case at bar, defendant was not deprived of an opportunity to cross-examine R.K. She answered all of defen-

dant's questions on cross-examination.  Defense counsel at both trial and on appeal provide a somewhat misleading representation of R.K.'s testimony.  R.K. never specifically denied defendant placed his tongue or mouth on her vagina.  She was never asked this specific question by either the State or defendant.  The State only asked R.K. if defendant had touched her with anything beside his hand.  As we stated earlier, it is easy to see how R.K. would not equate oral sex with touching.  There is no reason to believe R.K. would have refused to answer a question from defense counsel as to whether defendant put his mouth or tongue on her vagina.

Defendant does not argue his trial counsel was ineffective for failing to ask R.K. whether defendant put his mouth or tongue on her vagina.  It appears this was a matter of strategy on the part of defense counsel.  Defense counsel argued to the jury the State failed to prove its case beyond a reasonable doubt because R.K. testified defendant had never touched her with anything beside his hand.  Defense counsel made the following argument to the jury:

"Now, ladies and gentleman, you've heard a lot of testimony about [defendant] allegedly touching [R.K.'s] butt, putting his hand on her butt.  That's not the charge here.  He's not charged with touching her butt.  As

- 23 -

far as whether he's guilty or not guilty, that isn't the ultimate question. What you have to find is that [the State] has proved beyond a reasonable doubt that he put his mouth on her vagina. [R.K.] did not tell you that today. As she sat here in open court having to face everyone in the courtroom she did not tell you that happened once. In fact, she told you that didn't happen.

Ladies and gentleman, it comes down to the believability of witnesses and you believe what happened on a tape when she didn't have to face everyone, when she's in a private room with the detective who is just gathering information and not asking question, or you believe what happened in court, or do you believe that you just can't possibly know. Is there so much of a difference that it's impossible to know exactly what happened? Because if that comes into your mind, that's reasonable doubt. When you call that kind of evidence into question, that's reasonable doubt. Like I said, ladies and gentleman, this case is riddled with it."

In a situation such as this, defense counsel is placed in a precarious position. In general, during any trial, an attorney does not want to ask a question if he does not know how the witness will answer. Further, an attorney surely does not want to elicit an answer that will implicate his client. However, strategic considerations such as these do not make the witness unavailable for cross-examination. In this case, R.K. was present, she answered all of the questions posed by defense counsel, and nothing in the record indicates she would not have answered any other questions defense counsel could have asked. Since we find R.K. was available for cross-examination, trial counsel's performance was not deficient. An attorney is not required to, and indeed should not, make an argument not well-grounded in fact or law.

### III. CONCLUSION

For the reasons stated, we affirm defendant's conviction. As part of our judgment, we grant the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

MYERSCOUGH, P.J., and TURNER, J., concur.